MARC E. MAYER (SBN 190969)
 mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000

MARISSA B. LEWIS (*pro hac vice application pending*)
 mbl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, NY 10022
Telephone: (212) 509-3900

Attorneys for Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEREK S. POWELL a/k/a "Dutch" "Zen," "Sin," "Sal," "Valhalla," and "Salmaer"; BRYAN THOMAS MANNION a/k/a "Kaladin"; EXALTED MANAGEMENT SERVICES, a Nevada Corporation; EXALTED MANAGEMENT AND CONSULTATION SERVICES LLC, a New Mexico Limited Liability Company; LINCOLN MARSHALL SIMPSON a/k/a "twotailedtitan"; BRIEN ALLEN MIDDAUGH a/k/a "worldforgerzen"; ANDREW JAMES SEWARD a/k/a "andrew6180"; ALEXANDER STEVEN KOZMA a/k/a ".grey0001"; YE LWIN a/k/a "kalethuzad"; ONLINE MANAGEMENT PARTNERS, an entity of unknown form; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 8:26-cv-01506<br><br>**COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br>**(2) INDUCEMENT TO INFRINGE COPYRIGHTS**<br>**(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(4) VICARIOUS COPYRIGHT INFRINGEMENT**<br>**(5) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**<br>**(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>**(7) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)]**<br>**(8) PARTICIPATION IN A RICO ENTERPRISE [18 U.S.C. § 1962(c)]**<br>**(9) ENGAGING IN A RICO CONSPIRACY [18 U.S.C. § 1962(d)]**<br><br>**Demand For Jury Trial** |

Mitchell
Silberberg &
Knupp LLP

21613085.3

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff Blizzard Entertainment, Inc. ("Blizzard") is the developer, publisher, and owner of some of the most popular video games in the world, including the immensely popular online role-playing game "World of Warcraft" ("WoW"). WoW is a "massively multiplayer online role-playing game" ("MMORPG"), in which hundreds of thousands of people simultaneously explore and engage in a variety of adventures across an enormous computer-generated fantasy world. Millions of players around the world, including in the United States, pay a monthly subscription fee to be able to create an account on and access one of Blizzard's password-protected WoW Servers. Access to Blizzard's WoW Servers enables players to enter the WoW virtual game world and to experience the highly creative, copyrighted content of the WoW game environment.

2. Blizzard has long taken steps to protect its valuable intellectual property, including to protect WoW, a game that is the result of decades of creative work and innovation by countless dedicated members of the Blizzard team. Blizzard likewise has a long history of finding ways to support *safe, legal, and respectful* expressions of player creativity within WoW, such as through providing authorized tools by which players can modify aspects of the game (*i.e.,* modding) or through creator partnerships with players. Also, to keep the game fresh and exciting, Blizzard releases content updates and improvements on a regular basis, such as yearly or bi-yearly "expansion packs," which offer new storylines, characters, creatures, dungeons, and other new material for players to discover and explore – including, most recently, *World of Warcraft: Midnight*. For those players who prefer to play older, legacy versions of WoW, Blizzard offers "World of Warcraft Classic," access to which is included with an active WoW subscription.

3. In the two decades since WoW first was released, Blizzard has invested an enormous amount of time and money into creating, maintaining, and

Mitchell
Silberberg &
Knupp LLP

21613085.3

2

**COMPLAINT**

updating the game.  But when unscrupulous actors such as Defendants (defined below) seek to profit from Blizzard's valuable intellectual property (including protected code and game assets), they undermine Blizzard's efforts to deliver classic and community-driven content, devalue the WoW experience, and cause serious harm to Blizzard and the many artists, programmers, game designers, and other creative professionals who have worked (and continue to work) tirelessly to create a unique and enjoyable gaming experience for both new and longtime players.

4.      The Defendants in this action have built an entire business on large scale, egregious, and ongoing infringement of Blizzard's intellectual property.  As set forth in more detail herein, Defendants are in the for-profit business of developing, operating, maintaining, and monetizing an unauthorized copycat version of WoW known as "Project Ascension."  Through Project Ascension, Defendants have found a lucrative way to exploit and profit from the popularity of the WoW game experience.  Specifically, via their online website Defendants purport to offer to the public paid access to a group of unauthorized, "emulated" private WoW game servers, as well as all of the software and other tools necessary to access and use these emulated servers, including pirated copies of the WoW software that they specially modified to work with its unauthorized servers.

5.      Project Ascension's emulated servers work by mimicking and modifying the normal mechanics by which players access Blizzard's WoW Servers.  To play WoW, players must possess a licensed copy of the WoW game software (known as the game "client") and an active WoW account, which gives the player access to Blizzard's WoW remote game servers, and pay subscription fees to Blizzard.  However, emulated servers such as those offered by Project Ascension allow members of the public to play modified versions of WoW without authorization from the game's publisher or copyright owner – and, critically, without possessing a licensed copy of the game, creating and maintaining an

account, or paying subscription fees.  Defendants accomplish this objective by creating and distributing, without Blizzard's authorization, a modified copy of the WoW Client and hosting at least five WoW Servers that can be accessed and played using this pirated client software.

6.      Project Ascension's unauthorized servers harm the player experience in several ways.  By way of example, these unauthorized private servers drive away otherwise dedicated WoW players, introduce security risks to players, fragment the WoW player community, and create confusion as to what are official, supported versions of WoW.  When a player moves to an unauthorized, illegal server such as a Project Ascension private server and has a negative experience (including security breaches or inferior player experience), that confusion damages Blizzard's official WoW brand and results in a significant loss of revenue for Blizzard.  Private servers such as Project Ascension also encourage and facilitate video game piracy by allowing players to avoid paying for the game experience that Blizzard has invested so much time and money to create.

7.      Project Ascension is among the largest private WoW Servers available today.  Defendants purport to offer via Project Ascension "a custom World of Warcraft experience" with "over a million players."[1] Indeed, Defendants claim that Project Ascension was "crafted by a professional full-time indie dev-team" and "is the premier custom WoW mod [modification] with fast dedicated servers, 24/7 Support, a dedicated Balance team and Quality Assurance team."  To create Project Ascension, Defendants copied the entirety of the WoW Client software, added various additional or modified content, and reprogrammed this modified client (the "Ascension Client") to connect to their own emulated pirate servers.  Defendants programmed their emulated servers to cause the game to function in ways not intended by Blizzard, such as by removing restrictions on

Mitchell
Silberberg &
Knupp LLP

[1] https://project-ascension.fandom.com/wiki/Project_Ascension_Wiki#Area_52

4

**COMPLAINT**

character classes or abilities.  Defendants distribute the infringing Ascension Client to the public via their website ascension.gg (the "Ascension Website").  To play Project Ascension, a user need only download the Ascension Client, create an Ascension account, and then connect to one of six emulated servers (the "Ascension Servers"), which are created, operated, and maintained by Defendants.

8.    In the course of operating Project Ascension, Defendants have distributed (and are continuing to distribute) millions of pirated copies of Blizzard's copyrighted WoW game software.  They have encouraged and induced members of the public to install that software on their computers and use it to connect to Defendants' unauthorized servers.  Additionally, to enable their pirated Ascension Client to operate with their Ascension Servers, Defendants removed the technical measures contained in Blizzard's original WoW Client software that prevent it from being used without a license and without being connected to Blizzard's official servers.  As a result, Defendants have assisted and enabled millions of people to copy, access, and play WoW without paying the subscription fee that allows Blizzard to operate and update the game.  Defendants generate substantial revenue from their infringing conduct by soliciting payments (which it calls "donations") from its users.

9.    By virtue of the foregoing conduct, Defendants have infringed Blizzard's copyrights and trademarks, assisted and encouraged others to infringe Blizzard's copyrights, trafficked in devices that circumvent Blizzard's access control measures, and induced hundreds of thousands of users to breach their contracts with Blizzard.  Defendants' conduct diverts players from Blizzard's games, undermining the creative work of Blizzard's skilled and devoted employees.  Defendants' conduct is willful, intentional, and deliberate.

10.    Finally, Defendants have violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), by working together to operate a sophisticated and lucrative global enterprise that

Mitchell
Silberberg &
Knupp LLP

5

**COMPLAINT**

21613085.3

develops and sells software that Defendants know illegally infringes on Blizzard's trademarks and copyrights. Defendants' participation in this enterprise, including authoring and distributing extensive U.S. marketing campaigns and funding solicitations that tout pirated content, constitutes illegal racketeering activity.

11.     Defendants are well aware that their conduct is unlawful and violates Blizzard's rights. In fact, they are so clearly and painfully aware that their conduct constitutes willful and deliberate copyright infringement – and, indeed, constitutes copyright infringement on a massive scale – that they have taken extraordinary steps to conceal their identities, protect their personal assets, and safeguard against takedown notices or court judgments. Most notably, Blizzard is informed and believes, and on that basis alleges, that Project Ascension's pirate servers are hosted on "bulletproof" servers associated with the Russia-based Aeza Group. In 2025, the U.S. Department of the Treasury placed sanctions on Aeza, "for its role in supporting cybercriminal activity targeting victims in the United States and around the world," including by selling "access to specialized servers and other computer infrastructure designed to help cybercriminals like ransomware actors, personal information stealers, and drug vendors evade detection and resist law enforcement attempts to disrupt their malicious activities." Defendants' decision to work with such criminal enterprises alone signals willful intent to engage in unlawful activity.

12.     Accordingly, this Court should enjoin Defendants' conduct and award Blizzard monetary damages in an amount to be proven at trial.

## JURISDICTION AND VENUE

13.     This is a civil action seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and under the laws of the State of California.

Mitchell
Silberberg &
Knupp LLP

21613085.3

6

**COMPLAINT**

14.    This Court has subject matter jurisdiction over Blizzard's claims for copyright infringement and violation of Section 1201 of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Blizzard's state law claim for intentional interference with contractual relations, in that the claim is so related to Blizzard's claims under the Copyright Act and DMCA as to be part of the same case or controversy.

15.    This Court has personal jurisdiction over Defendants because all Defendants have, *inter alia*, engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and, among other things, purposefully have directed their activities at the United States and at California.  Blizzard is informed and believes, and on that basis alleges, that, among other things, (a) each of the Defendants or their respective agents are doing or have been doing business continuously in the State of California and this District and target their marketing and advertising to users in the United States (including by operating their marketing operations from within the United States), (b) a substantial part of the wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Central District of California, (c) Defendants know that the damages and other harmful effects of Defendants' infringing activities occur and are felt in the United States, and primarily in California, where Blizzard has its principal place of business, (d) Defendants contract with thousands of individuals located in the United States, knowing that they are located in the United States, (e) Defendants could, but refuse to, restrict the use of their emulated servers within the United States, and (f) Defendants contract with numerous U.S.-based service providers, including domain name registrars, software code repositories, online chat rooms and communities, social media networks, and video-sharing websites. Additionally, one or more of the Defendants have affirmatively assented to the

Mitchell
Silberberg &
Knupp LLP

7

**COMPLAINT**

end-user license agreement (EULA) required to access Blizzard's WoW Servers, which includes an agreement "to submit to the exclusive jurisdiction of the state and federal courts in Orange County, California."

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or which Blizzard's injury was suffered.

## THE PARTIES

17.     Blizzard is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California.

18.     Blizzard is, and at all relevant times has been, the owner of the United States copyright in the computer game titled "World of Warcraft," including its additions, patches, and expansions (collectively, "WoW").  Blizzard's copyright in WoW covers nearly all aspects of the game as distributed, including, without limitation, (a) all of the human- and machine-readable computer code and any other data distributed as part of the WoW game, (b) all graphical and textual elements of the screens that appear in the game when the game is executed on a personal computer, (c) all graphical and textual elements of documents distributed with the game, (d) all motion picture and sound recordings, and other audio-visual elements distributed with and as part of the game, and (e) the dynamic, evolving virtual world that is created by the interaction between the WoW "client" software and its remote game servers.  Blizzard's registered copyrights in WoW and its expansions include those set forth in Schedule A to this Complaint.

19.     Blizzard is informed and believes, and on that basis avers, that each of the Defendants herein is directly engaged in the development, operation, maintenance, marketing, and monetization of an emulated, or "private," set of WoW Servers known as "Project Ascension."  The primary purpose of Project Ascension is to profit from the unauthorized use of Blizzard's copyrighted WoW

Mitchell
Silberberg &
Knupp LLP

21613085.3

8

**COMPLAINT**

game, including by enabling members of the public to play copies of WoW without paying monthly subscription fees, creating a WoW account, observing Blizzard's rules of conduct, or obtaining a license from Blizzard. In so doing, Defendants' aim is to divert users from Blizzard's official WoW Server to their own unlawful Ascension Servers, where they receive payments from these users in the form of "donations." As set forth in more detail below, each of the Defendants plays a particular role in the operation, development, maintenance, monetization, and marketing of Project Ascension.

20. Blizzard is informed and believes, and on that basis alleges, that Defendants Derek Powell and Bryan Thomas Mannion of Nashville, Tennessee and Akron, Ohio, respectively, are the owners, operators, and administrators of Project Ascension. In that role, Powell and Mannion oversee and manage all of the operations of Project Ascension, actively solicit payments from players of their private servers, manage and control the development of Project Ascension, handle all of the business affairs of Project Ascension, hire and supervise all Project Ascension staff members, manage and coordinate the marketing and advertising for Project Ascension, ensure that the Ascension Client and Ascension Servers are functioning properly, and act as the overall masterminds of the business. Blizzard is informed and believes, and on that basis avers, that Powell and Mannion have received millions of dollars from their operation of Project Ascension, much of which is run through various shell corporations, including the two corporate Defendants described herein.

21. Blizzard is informed and believes, and on that basis alleges, that Defendant Exalted Management Services ("EMS") is a Nevada corporation, with its listed address at 17300 Majestic View Dr., Reno, NV 89521. According to its website (exaltedmanagementservices.com), EMS purports to provide "server management," "website development" and "game development." In fact, Blizzard is informed and believes, and on that basis alleges, that EMS is an undercapitalized

Mitchell
Silberberg &
Knupp LLP

21613085.3

9

**COMPLAINT**

shell company that does not have an office or employees, and exists solely as a conduit for monetary transactions and to avoid U.S. tax liability for revenue related to Project Ascension.  For example, EMS's "address" is that of a corporate registration service known as "Nevada Business Corporations;" its sole "officer" (serving as President, Secretary, Treasurer, and Director) is an employee or agent of a corporate registration service and the officer of dozens of corporations. Blizzard is informed and believes, and on that basis alleges, that EMS serves as an alter ego of Powell and Mannion, who intermingle personal funds with corporate funds and use a house owned by EMS as their personal residence.

22.    Blizzard is informed and believes, and on that basis alleges, that Defendant Exalted Management and Consultation LLC ("EMC") is a New Mexico corporation, with its listed address at 317 Commercial Street, NE, Albuquerque, New Mexico, 87102.  Blizzard is informed and believes, and on that basis alleges, that EMC is another undercapitalized shell company owned by Powell and Mannion that does not have an office or employees, and exists solely as a conduit for monetary transactions and to avoid U.S. tax liability for revenue related to Project Ascension.  Like EMS, EMC's "address" is that of a corporate registration service known as "Law 4 Small Business, PC."  Blizzard is informed and believes, and on that basis alleges, that EMC serves as an alter ego of Powell and Mannion, who intermingle personal funds with corporate funds and use EMC to conceal their assets from claimants such as Blizzard and from creditors.

23.    Blizzard is informed and believes, and on that basis alleges, that Defendant Lincoln Marshall Simpson (a/k/a "twotailedtitan") is an individual who resides in Winnie, Texas.  Simpson is the "Senior Gamemaster" of Project Ascension.  In this role, Simpson provides technical and customer support for Project Ascension, including by assisting players in acquiring and installing the Ascension Client and connecting to the Ascension Servers.  To perform this role, Simpson not only contributed to copyright infringement and breaches of the EULA

Mitchell
Silberberg &
Knupp LLP

21613085.3

10

**COMPLAINT**

(as defined below) by others, but also necessarily personally downloaded the Ascension Client, connected the Ascension Client to the Ascension Servers, and played an unauthorized copy of WoW.

24.    Blizzard is informed and believes, and on that basis alleges, that Defendant Brien Allen Middaugh (a/k/a "worldforgerzen") is an individual who resides in Oceanside, California. Middaugh is part of the "creative team" for Project Ascension. In this role, Middaugh creates and develops content for Project Ascension, all of which is copied and/or unlawfully derived from WoW content owned by Blizzard. In the process of doing so, Middaugh obtained, copied, and modified digital files contained in the WoW Client without Blizzard's authorization.

25.    Blizzard is informed and believes, and on that basis alleges, that Defendant Andrew James Seward (a/k/a "andrew6180") is an individual who resides in Tucson, Arizona. Seward is the "Custom Systems Developer" for Project Ascension. In this role, Seward is engaged in programming and coding the Ascension Servers software and Ascension Client software. In doing so, Seward obtained, copied, and modified digital files contained in the WoW Client without Blizzard's authorization.

26.    Blizzard is informed and believes, and on that basis alleges, that Defendant Alexander Steven Kozma (a/k/a ".grey0001") is an individual who resides in Daly City and/or San Francisco, California. Kozma is the "release lead" for Project Ascension. In this role, Kozma oversees and promotes updates, patches, and modifications to Project Ascension. In the process of doing so, Kozma obtained, copied, and modified digital files contained in the WoW Client without Blizzard's authorization.

27.    Blizzard is informed and believes, and on that basis alleges, that Defendant Ye Lwin is an individual who resides in Sydney, New South Wales, Australia. Lwin is the "Core Developer" for Project Ascension. In this role, Lwin

Mitchell Silberberg & Knupp LLP

21613085.3

11

**COMPLAINT**

is engaged in programming and coding the Ascension Server software and/or the Ascension Client software. In doing so, Lwin obtained, copied, and modified digital files contained in the WoW Client without Blizzard's authorization.

28. Blizzard is informed and believes, and on that basis avers, that Defendant Online Management Partners is the entity that collects the donations on behalf of the Ascension.gg website. Blizzard has been unable to determine at this time whether Online Management Partners is a formal legal entity or merely an unincorporated association, and Blizzard will amend its complaint upon learning such information.

29. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Blizzard, and Blizzard sues said Defendants by such fictitious names (the "Doe Defendants"). The Doe Defendants include individuals whose real identities are not yet known to Blizzard, but who are acting in concert with the named Defendants, often in the guise of Internet aliases, in committing the unlawful acts alleged herein. Specifically, Blizzard is informed and believes, and that basis avers, that the Doe Defendants are associated with the following aliases on the online communications platform known as Discord: "zamasu1977," "caras0001," "broicantcomeupwiththeusername," "bert00001," "reaperskippy0001," "kitey0001," "boch0001," "orinoa," "vlathis," "chasingthegoose," "jonas2881," "mewmix," "minxnobody," "pigmyrhino," and "drrileyj." Blizzard is informed and believes, and on that basis avers, that the Doe Defendants are liable to Blizzard as a result of their participation in all or some of the acts hereinafter set forth (all of the Defendants, including the Doe Defendants, collectively are referred to as "Defendants").

30. Blizzard is informed and believes, and on that basis avers, that at all times mentioned in this complaint, each of the Defendants was the agent of each of

Mitchell
Silberberg &
Knupp LLP

21613085.3

12

**COMPLAINT**

the other Defendants and, in doing the things averred in this complaint, was acting within the course and scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS
### Blizzard's World of Warcraft Computer Game

31.	Blizzard is a computer game publisher engaged in the business of developing, financing, producing, marketing, and distributing high-quality software game products for personal computers (PCs), mobile devices, and video game consoles.  Among the software products produced and distributed by Blizzard are some of the most popular computer and video games in the world, including the immensely popular online role-playing game "World of Warcraft" and its updates and expansion packs (collectively, "WoW").

32.	WoW, which originally was released in 2004, is one of the most ambitious and critically acclaimed online computer games ever created.  WoW is a Massively Multiplayer Online Roleplaying Game ("MMORPG"), a genre of computer game in which a large number of players interact with each other simultaneously in a persistent "virtual" online world.  In WoW, players from around the globe assume the roles of characters in a sprawling, ever-changing virtual fantasy world, populated by a variety of human and computer-controlled characters.  As they explore, adventure, and quest across WoW's vast online world, players advance, upgrade, and customize their characters, thereby accessing new content in the WoW gaming environment.  Since its release, millions of people around the world have played and enjoyed, and continue to play and enjoy, WoW.

33.	WoW is the product of countless hours of employee time, including that of game designers, artists, writers, animators, music composers, producers, programmers, community support personnel, and many others.  Blizzard has made an enormous investment in creating and maintaining WoW and ensuring that WoW

Mitchell
Silberberg &
Knupp LLP

21613085.3

13

**COMPLAINT**

remains a fun and rewarding experience. Blizzard continues to update, expand, and improve the WoW game world and online experience, such as by adding new features, new places to explore, graphical and gameplay updates, and new virtual items for players to acquire in the game world. These updates, expansions, and enhancements keep the game fresh and exciting for both long-time players and new players. Additionally, for those long-time players who prefer playing the game without those expansions and enhancements, in 2019 Blizzard launched "World of Warcraft Classic." "World of Warcraft Classic" offers players the opportunity to play an older version of the game (as well as the most recent version of the game), for a single subscription fee.

34. Two interrelated components are required to play WoW:

a. First, users must download and install on their personal computers a software application known as the WoW game "client." The client contains an "executable" (.exe) file that is used to launch the WoW game program. The client contains a large number of software, audio, video, and other media files that comprise the individual elements of the WoW game, such as the game's software engine (which governs the functioning of the game world), as well as the characters, artwork, sounds, music, dialogue, and other audiovisual elements that are perceived by the user when the game is being played.

b. Second, once the WoW Client has been installed, users must create a WoW account and connect to one of Blizzard's password-protected online WoW Servers. Blizzard's WoW Servers, among other things, provide players with access to the copyrighted content of the WoW game environment, connect WoW players with each other, generate and populate the living, evolving WoW game world in which the game is played, and enforce and implement the rules of the game.

35. In its normal course of operation, WoW cannot be played without both a licensed copy of the up-to-date WoW Client and an active, authorized

Mitchell
Silberberg &
Knupp LLP

21613085.3

14

**COMPLAINT**

online connection to Blizzard's WoW Servers.  When a player is playing WoW, data is constantly passing to and from the client and server.  The client contains the code and assets that render WoW's virtual world, while the server tells the client where objects, other players, monsters, and other features of the virtual world are located in relation to the player.  The data that passes back and forth between client and server is in a form known as a "packet."  In WoW, millions of pieces of information are passed between clients and servers in the blink of an eye, creating a seamless game experience.

36.    In order to recoup its massive investment in WoW and to pay for the substantial ongoing maintenance and updates to the game, Blizzard charges users a subscription fee.  Payment of the subscription fee permits users to access Blizzard's WoW Servers and play in the WoW gaming environment.

37.    The WoW Client is made available by Blizzard exclusively via its proprietary Battle.net platform.  The WoW Client constantly is being updated and refined, including to add additional features, fix bugs, and increase security measures.  Once an updated client is made available to the public, the earlier client is removed from Battle.net and no longer is made available by Blizzard to the public.  Blizzard does not authorize any third parties to distribute any older, superseded versions of the WoW Client.  Thus, any websites that distribute any superseded version of the WoW Client are doing so without license or authorization, and thereby are infringing Blizzard's copyright in the WoW game software.

38.    Additionally, the WoW Client software is programmed and designed to connect only to the official Blizzard WoW Servers.  It is not possible to connect to a WoW Server without possessing a licensed copy of the WoW Client and an active WoW account.  These restrictions ensure that players cannot use pirated or unauthorized copies of the WoW Client.

Mitchell
Silberberg &
Knupp LLP

21613085.3

15

**COMPLAINT**

**The Blizzard EULA**

39.    Prior to playing WoW and installing the WoW Client software, players are required to set up a Battle.net account.  In order to create a Battle.net account, players are required to affirmatively agree to the "Blizzard End User License Agreement" ("EULA"), which applies to players' use of the Battle.net platform and any and all Blizzard games, including WoW.  Additionally, the EULA is displayed to players the first time they access the WoW game servers, and players must affirmatively accept the EULA in order to be granted access to those servers.  If players do not agree to the EULA, they will be denied access to Battle.net and any Blizzard games, including WoW.

40.    From time to time, Blizzard updates its EULA.  Each time it makes material updates, Blizzard notifies users that the EULA has been updated and requires users to accept the new EULA before they may access Battle.net and the WoW Servers.  The most recent version of the EULA always is made available to the public on Blizzard's public-facing internet website.[2]

41.    The EULA sets forth the terms of a limited use license between Blizzard and the users of WoW, pursuant to which Blizzard grants to the user, subject to the terms of the EULA, a conditional "limited, revocable, non-sublicensable, and non-exclusive license" to install WoW on the user's personal computer "for your personal and non-commercial entertainment purposes only." The license contained in the EULA is conditioned upon the user's compliance with a set of contractual obligations and provisions, including provisions that expressly prohibit certain user conduct, including:

> **Matchmaking**: Host[ing], provid[ing] or develop[ing] matchmaking services for the Game(s), or intercept[ing], emulat[ing] or redirect[ing] the communication protocols used by Blizzard in any way, for any purpose, including

---

[2] *See* https://www.blizzard.com/en-us/legal/fba4d00f-c7e4-4883-b8b9-1b4500a402ea/blizzard-end-user-license-agreement.

16

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

21613085.3

without limitation unauthorized play over the internet, network play (except as expressly authorized by Blizzard), or as part of content aggregation networks.

**Unauthorized Connections**: Facilitat[ing], creat[ing] or maintain[ing] any unauthorized connection to the Platform including without limitation (i) any connection to any unauthorized server that emulates, or attempts to emulate, the Platform; and (ii) any connection using third-party programs or tools not expressly authorized by Blizzard.

42. The EULA is a valid and enforceable contract between Blizzard and the users of WoW. Any use of the WoW game client that is not in accordance with the EULA is expressly prohibited, constitutes a breach of the EULA, and will subject the user to penalties under the EULA, including revocation or nullification of the user's limited license.

43. The provisions of the EULA are designed to protect the integrity of the game and to provide commercially reasonable contractual protection of Blizzard's rights in and to the client and server elements of WoW.

## Blizzard's Access Control Technologies

44. To prevent members of the public from improperly accessing, exploiting, modifying, and profiting from WoW without its consent, including by using pirated, unlicensed copies of the WoW Client, Blizzard has implemented a number of technological measures that effectively control unauthorized access to the game.

45. First, the WoW Client contains software code that prevents the client from being connected to servers other than Blizzard's WoW game servers. If the client attempts to connect to a game server other than Blizzard's WoW game server, the WoW Client will terminate and WoW cannot be played. Additionally, during its normal course of operation, once connected to Blizzard's WoW Server, the WoW Client will perform a periodic "check" of the Internet Protocol ("IP")

Mitchell Silberberg & Knupp LLP

17

**COMPLAINT**

21613085.3

address to which it is connected to confirm that it still is connected to the authorized server. If at any time, that "check" fails (*i.e.*, if the WoW Client determines that it is connected to a server other than a Blizzard WoW Server), the client will immediately terminate its operation and the game cannot be played.

46. Second, in order to ensure that the player is using a properly licensed copy of the WoW Client and has an active, fully paid WoW account, WoW Servers conduct checks to confirm that the copy of the WoW Client being used has been licensed by the user and that the account is current. If any of these checks fail, the user will be unable to play the game.

47. Third, Blizzard uses encryption technology to protect the "packets" of data that are transmitted between each player's individual client and the remote server. These packets contain all of the information necessary for multiple players to interact with each other in WoW's expansive virtual world, such as where each player is located on the map, what actions the player is taking, and where enemies or monsters are located. By encrypting these packets, Blizzard prevents members of the public from viewing, modifying or tampering with the communication between client and server (and thus tampering with the game itself). It is not possible to view or understand the data contained in these packets – and thus create an unofficial working remote server – without decrypting them.

### The Project Ascension Enterprise

48. Blizzard is informed and believes, and on that basis alleges, that Defendants all are participants in a common enterprise dedicated to the Project Ascension private server network and overall business (the "Enterprise"). As such, Defendants are engaged in various activities related to developing, updating, distributing, monetizing, and otherwise supporting the Ascension Client and Ascension Servers. At all times relevant herein, Defendants have been engaged in

Mitchell
Silberberg &
Knupp LLP

18

**COMPLAINT**

21613085.3

such activities.  They have done so, and continue to do so, via email, online chat rooms, and other online communication platforms such as Discord.

49.  Blizzard is informed and believes, and on that basis alleges, that Project Ascension primarily is directed by Defendants Powell and Mannion, who oversee the operation of the Project Ascension network, including through fictitious shell companies such as EMS and EMC.  These two individuals act as the masterminds and driving forces behind Project Ascension and are responsible for developing the Ascension Client, ensuring the functioning of the Ascension Servers, managing the overall operations of the enterprise, overseeing the enterprise's finances, setting up and maintaining the shell companies, updating and improving the Ascension Client and Ascension Servers, marketing and advertising Project Ascension, collecting "donations" and interfacing with payment processors, and supervising and overseeing the Project Ascension development and operations team.

50.  As set forth herein, each of the other individual Defendants played a particular role (or multiple roles) in supporting and furthering the Project Ascension Enterprise.  For example, some of the Defendants, such as Kozma, Lwin, Middaugh, and Seward, are software developers or game designers.  These Defendants were or are engaged in developing, updating, patching, and improving the Ascension Client and Ascension Servers.  These developers then supply the Ascension Client and Ascension Servers to the public and receive payment or other consideration from the Enterprise for their work.  Other Defendants, such as Simpson, act as support representatives or community managers.  These individuals operate and maintain Discord servers and Reddit forums, monitor and review message board postings, provide updates to the Project Ascension "community," communicate with users of Project Ascension, offer technical support to users of Project Ascension, and help promote Project Ascension. Additionally, Blizzard is informed and believes, and on that basis alleges, that

other individuals, including the Doe Defendants, act as business and financial administrators for the Enterprise.

51.    All of the Defendants work collectively in furtherance of a single goal: namely, to ensure, encourage, enable, or otherwise facilitate the widespread distribution of the Ascension Client and use of the Ascension Servers for their own financial benefit.  As such, Defendants are liable jointly and severally for the unlawful conduct engaged in by the Enterprise, are active participants in the distribution of the infringing Ascension Client, and collectively are responsible for the ongoing misuse of Blizzard's intellectual property.

## Project Ascension

52.    Project Ascension is a network group of not less than six online multiplayer servers, which are accessible only via the Ascension Client.  The purpose of Project Ascension is to allow and enable members of the public to access and play a modified version of WoW without Blizzard's authorization, without being connected to a Blizzard WoW Server, and without owning a valid, licensed copy of the WoW game and an active subscription allowing the game to be played on Blizzard servers.  Thus, the Project Ascension private WoW Servers compete directly with Blizzard's own "World of Warcraft Classic," and are intended to appeal to and capture the audience for "World of Warcraft Classic." According to Project Ascension's website, more than one million people have played the game on the Ascension Servers.

53.    Project Ascension purports to offer several unauthorized versions of WoW, titled or referred to as "Destiny's Dawn," "Warcraft Reborn," and "Expanded Azeroth.[3]"  Each Project Ascension server gives players the ability to play the entirety of the "original" version of the WoW video game that was offered

---

[3] "Azeroth" is the name of WoW's fictional world, which is comprised of several smaller land masses known as "zones."

Mitchell
Silberberg &
Knupp LLP

21613085.3

20

**COMPLAINT**

by Blizzard in or about 2004 (sometimes referred to as "Vanilla WoW") and (on some servers) its first two expansions (the "Burning Crusade" and "Wrath of the Lich King").  According to the Ascension Website, Project Ascension offers new or modified playable "classes" and "professions," new or modified locations, new items, and a modified multiplayer (PvP) mode.  All of this purportedly "new" content is derived entirely from Blizzard's original WoW content and employs artwork and software "assets" (*e.g.*, objects, animations, character models, and environments) from WoW.  All of this content was created without Blizzard's authorization or consent, for the express purpose of diverting players from the Blizzard's legitimate version of WoW to Project Ascension's pirated version of the game.

54.    Defendants aggressively market and advertise Project Ascension throughout the United States, including via social media networks, such as Discord, Facebook (@OfficialAscension), Reddit (https://www.reddit.com/r/ProjectAscension/), and others.  Additionally, Blizzard is informed and believes, and on that basis alleges, that Defendants created and distributed targeted video advertisements on social media networks such as Facebook.

### Ascension.gg – The Project Ascension Website

55.    Project Ascension is promoted and made available via the Ascension Website "ascension.gg."  The Ascension Website provides players and potential players with information, instructions, software products, and other services necessary to access and use the emulated Project Ascension Servers.

56.    The Ascension Website is filled with dozens of images, videos, screen captures, and artwork copied directly from WoW.  For example, as illustrated below, the homepage of the Ascension Website includes a large logo copied from

Mitchell
Silberberg &
Knupp LLP

21613085.3

21

**COMPLAINT**

WoW's logo, still images from WoW, videos of WoW being run on the Ascension Servers, and depictions of WoW characters:





**COMPLAINT**

Mitchell Silberberg & Knupp LLP

21613085.3

57.    The Ascension Website also contains pages dedicated to "NEWS" (including announcements about updates to Project Ascension), an "OVERVIEW" of what Project Ascension offers to its players, a list of "FEATURES" that purportedly are offered only by Project Ascension, and a "TIMELINE" of "events" being offered on the Ascension Servers.  The Ascension Website also contains a "SUPPORT" page where players can get customer support, view their order history, see the status of each Ascension Server, and report bugs.  Defendants update the Ascension Servers frequently with incentives to attract new or returning players, such as special items, "Heroic World Bosses," or special events.  The Ascension Website also includes an in-game "SHOP," where players can make monetary "donations" in exchange for rewards, such as in-game currency or special in-game items.

58.    Most importantly, the Ascension Website contains a "Play Now" button.  When a user clicks the "Play Now" button, the website takes the user to a "Download" page and automatically downloads an Ascension Client or "launcher" (the "Ascension Launcher") to the user's computer.  The Ascension Website describes the Ascension Launcher as a "Fully Featured All-In-One Launcher" that is "Always Up To Date With the Latest Patches" and requires "One-Click to Install."

59.    In order to play WoW on the Ascension Servers, a user need only download and install the Ascension Launcher, create a Project Ascension account, and choose which Ascension Server the player wishes to connect to.  All of the other necessary technical functions are handled by Project Ascension, making the process extremely simple and user-friendly.  This simplicity is touted by Project Ascension as one of its defining features.  As the Ascension Website explains:

> **Our launcher will guide you through the process of**
> **installing, updating and customizing your game client.**
> Project Ascension is free to download and play on

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

21613085.3

Windows 10 and 11. The launcher auto-patches the game, manages approved addons, and lets you switch between Bronzebeard, Elune, and Conquest of Azeroth realms from a single client. Linux players can follow the community Wine/Lutris guide — Linux is unsupported but community-maintained."

The "Download" page is illustrated below:



### **The Project Ascension Launcher and Infringing WoW Client**

60. Once a user has downloaded and installed the Ascension Launcher, it can be launched simply by clicking an icon. The startup page of the Ascension Launcher displays news concerning updates to Project Ascension and upcoming events, a link to the Project Ascension Discord server, and an embedded YouTube

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

21613085.3

video displaying or promoting Project Ascension content. Among this content are images of WoW characters and locations, videos of WoW, and WoW artwork and imagery. Additionally, the user can access the in-game store, the "donations" page, the news feed, and other information directly from the Ascension Launcher.

61. If the user has never played WoW on Project Ascension, the Ascension Launcher will install the necessary Ascension Client software, which is a modified (or "modded") copy of the entire WoW software client, including all of the software files, art and music, 3D objects, textures, in-game maps, and other WoW content. If the user has played WoW on Project Ascension, the Ascension Launcher will check to determine if the user has the latest version of the Ascension Client. If not, then the Ascension Launcher will prompt the user to update or "patch" the Ascension Client to the latest version, at which time Ascension's remote servers will cause new Ascension Client software files to be downloaded to the user's computer.

62. An exemplar screen capture of the startup, or "home," screen of the Ascension Launcher appears below:



25

**COMPLAINT**

63.    When the user has installed the latest version of the Ascension Client, a "PLAY" button is displayed.  Clicking that button will cause the user's computer to automatically run (or "execute") the Ascension Client.  Upon launch, the user initially will be prompted to select which Ascension Server the player wishes to access (such as "Elune," "Area 52," and "Bronzebeard"), as illustrated below:



64.    Once the user has selected an Ascension Server, the Ascension Client will connect to the chosen Ascension Server and the user may experience the entirety of WoW's dynamic virtual world without Blizzard's authorization or consent.  Below are illustrations of WoW being played using the Ascension Client connected to an Ascension Server.

Mitchell
Silberberg &
Knupp LLP

21613085.3

26

**COMPLAINT**





**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

21613085.3



65.    As noted, Blizzard's WoW Client contains security measures that prevent the WoW Client from launching or, once launched, continuing to operate if the client is not connected to one of Blizzard's official WoW Servers. Accordingly, to create the Ascension Client, one or more of the Defendants necessarily removed or altered those portions of the original WoW Client software containing the security protections and replaced them with its own software files. As a result, when the Ascension Client is launched, it connects directly to the Ascension Servers without any restrictions.

66.    All of the software and audiovisual files contained in the Ascension Client are copies or derivative works of the original WoW Client files.  Blizzard is informed and believes, and on that basis alleges, that in order to circumvent and bypass Blizzard's security measures and allow the Ascension Client to operate with the Project Ascension servers, one or more of the Defendants downloaded and copied an older version of Blizzard's original WoW Client and then made several modifications:

(a)     First, the original WoW Client contains commands and instructions that direct it to connect to the Blizzard WoW Server.  One or more of the Defendants altered those commands and instructions in the Ascension Client so that when it is run the Ascension Client connects to the Project Ascension server, instead of the Blizzard WoW Server.

(b)     Second, one or more of the Defendants incorporated code into the Ascension Client that either (i) causes the Ascension Client to falsely detect that it is connected to the Blizzard WoW Server, or (ii) disables or removes the security checks that ensure that the client is connected to an official server and that the player is using a licensed copy of the game, rather than a pirated copy.

(c)     Third, Defendants – including, on information and belief, Defendants Powell, Mannion, Middaugh, Seward, Kozma, and Lwin – repeatedly, on an ongoing basis, altered the WoW Client to add additional content, functions, and features not present in the original WoW Client, such as new locations, new classes, and new types of gameplay, all of which (or almost all of which) are copied and adapted from WoW and thus infringe Blizzard's original WoW content. Defendants also made minor changes to the game's user interface.

67.     Other than the above modifications, the files contained in the Ascension Client are almost complete copies of the WoW Client files from which they are derived.  As such, the Ascension Client created, distributed, marketed, and promoted by Defendants contain much of the code and all of the artwork, music, objects, and other assets contained in Blizzard's copyrighted WoW Client.  Each time the Ascension Client is distributed or downloaded, an infringement of Blizzard's copyrighted WoW Client has taken place.

## The Project Ascension Servers

68.     Project Ascension offers multiple Ascension Servers (referred to as "realms").  Each of the Ascension Servers is designed to emulate (or mimic)

Mitchell Silberberg & Knupp LLP

21613085.3

29

**COMPLAINT**

Blizzard's official WoW Servers and to enable large-scale, multi-player online play of WoW without the authorization of Blizzard and without the need to pay for a subscription for WoW. Each Ascension Server offers various game-play modifications or "enhancements" not available on Blizzard's WoW Server. For example, when WoW is played on the long-running Ascension Server known as "Area 52," players can equip their characters with spells and abilities that would not be available to those characters on the official WoW servers. The "Bronzebeard" server touts to players the ability to "step into an expanded Azeroth with new locations and points of interest."

69. Blizzard is informed and believes, and on that basis avers, that in order to create the Ascension Servers and allow them to interact with the Ascension Client, Defendants or those working on their behalf engaged in reverse engineering activities. As part of those activities, Defendants or those working on their behalf necessarily decrypted the packets sent between the WoW Client and server and then built the Ascension Servers using information gathered from decrypted packets.

70. Blizzard also is informed and believes, and on that basis avers, that when Defendants created the Ascension Servers, they eliminated or disabled Blizzard's account authentication system and replaced it with their own system. They also do not need to have a licensed copy of a WoW Client (or the most recent version of the WoW Client). Thus, in order to access and play WoW on the Ascension Servers, players do not need to possess an active WoW account or to purchase a subscription to WoW. However, players need only possess a Project Ascension account, which is free to obtain but entirely within the control of Defendants.

Mitchell
Silberberg &
Knupp LLP

21613085.3

30

**COMPLAINT**

**Project Ascension's Business Is Built On Unlawful Conduct**

71.     Blizzard is informed and believes, and on that basis alleges, that Defendants have distributed versions of the Ascension Client millions of times, and more than one million players have played WoW on the Ascension Servers. Many, if not all, of these people are or previously were subscribers and players of WoW (on Blizzard's servers) and possess or possessed WoW accounts. Accordingly, many, if not all, of the players on the Ascension Servers at one time consented to Blizzard's EULA and agreed not to play WoW on emulated or unofficial servers.

72.     Defendants also provide ongoing technical support via message boards contained on the Ascension Website and related online communities such as Discord.  Blizzard is informed and believes, and on that basis avers, that Defendants – especially Defendants Powell, Mannion, and Simpson – regularly monitor these message boards and Discord servers and provide technical support to users.  In this way, Defendants encourage and induce players to download infringing content and breach the EULA.

73.     While Defendants claim that Project Ascension is "free to play," in fact, Project Ascension is a for-profit operation.  Defendants profit from their unlawful activities by encouraging users to make monetary "donations" to fund its continued operation.  Specifically, players may purchase "Donation Points" which serves as a virtual currency.  Defendants sell Donation Points for approximately $.50 each, with "bonus" Donation Points awarded for purchases over $15.00.

74.     Defendants incentivize the purchase of Donation Points by allowing players to trade Donation Points for in-game items, such as mounts, pets, and cosmetic gear, all purchasable via the Project Ascension "store."

75.     Blizzard is informed and believes, and on that basis avers, that Defendants have made millions of dollars from the sale of Donation Points. Blizzard is informed and believes, and on that basis avers, that the money from the

Mitchell
Silberberg &
Knupp LLP

21613085.3

31

**COMPLAINT**

sale of the Donation Points is collected by Defendants Online Management Partners, Exalted Management Services, and Exalted Management and Consultation Services (collectively, the "Corporate Defendants") for the benefit of Defendants Powell and Mannion.

76.    Project Ascension also has caused significant and irreparable harm to Blizzard.  This harm includes, but is not limited to, lost revenue from former WoW players who have been diverted to Project Ascension in order to avoid paying subscription fees to Blizzard and harm to Blizzard's valuable intellectual property, which is being exploited, modified, and monetized without Blizzard's consent and in ways that Blizzard disapproves and prohibits.

77.    Blizzard is informed and believes, and on that basis alleges, that Defendants are well aware that they do not have any license, right, or authority to engage in any of the foregoing activities.  It is well known to the public, and Defendants certainly know, that Blizzard owns the copyrights in WoW and that Blizzard expressly has prohibited the development, operation, and use of private or unauthorized servers.  Defendants also know that, by engaging in the foregoing activities, they are encouraging and inducing their users to download infringing content and to violate Blizzard's EULA.  For this reason, Defendants have gone to extraordinary lengths to conceal their identities, protect their personal assets, and safeguard against takedown notices or U.S. judgments, including by obtaining remote servers from notorious overseas actors that are known facilitators of criminal activity and supply servers to a variety of criminal actors.

78.    Blizzard has attempted to contact certain Defendants, including Powell and Mannion, on multiple occasions, including by email, hand delivery, and telephone.  In these communications, Blizzard advised Powell and Mannion that the operation of Project Ascension was unlawful and violated Blizzard's rights.  However, Defendants have ignored these communications and have continued to engage in their unlawful activities without pause.  Accordingly,

Mitchell
Silberberg &
Knupp LLP

21613085.3

32

**COMPLAINT**

Defendants have been placed on actual notice of the infringing nature of their conduct, but have refused to cease their activities.

79.    Blizzard is informed and believes, and on that basis alleges, that Defendants and others acting in concert with them will continue to cause Blizzard irreparable harm until and unless enjoined by this Court.

## COUNT I

### Direct Copyright Infringement

80.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 79, inclusive, and incorporates them by reference herein.

81.    Blizzard owns valid copyrights in WoW, including, without limitation, the WoW Client software; all of the screen displays created by the WoW Client software; WoW's artwork, music, dialog, characters, creatures, and environments; and WoW's dynamic virtual world.

82.    Defendants have infringed Blizzard's copyrights in WoW by reproducing, adapting, and distributing WoW, including the copyrighted elements of the WoW Client, game server, and gaming environment, without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.  Such infringing conduct includes, but is not limited to, (a) copying and adapting the WoW Client software to create the Ascension Client; (b) distributing to the public unauthorized copies and derivative works of the WoW Client software, including the Ascension Client software; (c) reproducing, adapting, publicly displaying, and publicly performing infringing videos, screen captures, artwork, and other images of WoW on the Ascension Website, the Ascension Launcher, and the Ascension Servers; (d) personally installing the Ascension Client on their personal computers, including for testing and development purposes; (e) distributing screen captures and videos of WoW on social media networks for the purpose of promoting Project Ascension.

Mitchell
Silberberg &
Knupp LLP

21613085.3

33

**COMPLAINT**

83. Each such infringement by Defendants of WoW constitutes a separate and distinct act of infringement.

84. Defendants' acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard.

85. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

86. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

87. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in WoW. Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II

### Inducement to Infringe Copyright

88. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 87, inclusive, and incorporates them by reference herein.

89. When users of Project Ascension download, install, and copy to their computers the Ascension Client, such users infringe Blizzard's copyrights in WoW. 17 U.S.C. §§ 106 and 501. Such users also infringe Blizzard's copyrights in WoW when they use the Ascension Client software files to connect to the Ascension Servers and play WoW thereon.

Mitchell
Silberberg &
Knupp LLP

34

**COMPLAINT**

21613085.3

90.     Defendants each have actively encouraged and induced users of Project Ascension to engage in the foregoing copyright infringement, including among other things, by providing such users with copies of the Ascension Client; providing instructions, encouragement, and technical support on how to install and use the Ascension Client; providing instructions on how to connect to the Ascension Servers and access and play WoW without authorization from Blizzard; announcing and rolling out updates and improvements to Project Ascension; adding and promoting new content and new Ascension Servers; offering rewards and incentives to players who join Project Ascension and pay "donations." As a direct and proximate result of such inducement, Defendants' users have infringed Blizzard's rights in WoW on a massive scale.

91.     Each such infringement by users of Project Ascension constitutes a separate and distinct act of infringement.

92.     Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

93.     As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

94.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

95.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights. Blizzard has no adequate remedy

Mitchell
Silberberg &
Knupp LLP

35

**COMPLAINT**

21613085.3

at law.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT III

### Contributory Copyright Infringement

96.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 95, inclusive, and incorporates them by reference herein.

97.    When users of Project Ascension download, install, and copy to their computers the Ascension Client, such users infringe Blizzard's copyrights in WoW.  17 U.S.C. §§ 106 and 501.  Such users also infringe Blizzard's copyrights in WoW when they use the Ascension Client to connect to the Ascension Servers and play WoW thereon.

98.    Defendants have actual and constructive knowledge of the foregoing infringements, including because their entire business is built on infringement and all of their users necessarily engage in copyright infringement.  Defendants have materially contributed to the foregoing infringements, including by creating the Ascension Servers, creating the Ascension Client, providing users with copies of the Ascension Client, marketing and promoting Project Ascension, communicating and contracting with users of Project Ascension, updating and improving Project Ascension, and providing technical and customer support.

99.    Each such infringement by users of Project Ascension constitutes a separate and distinct act of infringement.

100.    Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

101.    As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to

Mitchell
Silberberg &
Knupp LLP

36

**COMPLAINT**

maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

102.   Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

103.   As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT IV

## Vicarious Copyright Infringement

104.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 103, inclusive, and incorporates them by reference herein.

105.   When users of Project Ascension download, install, and copy to their computers the Ascension Client, such users infringe Blizzard's copyrights in WoW.  17 U.S.C. §§ 106 and 501.  Such users also infringe Blizzard's copyrights in WoW when they use the Ascension Client to connect to the Ascension Servers and play WoW thereon.

106.   Defendants have the right and ability to supervise and control the infringing conduct of users of Project Ascension, including because they have absolute and total control over Project Ascension user accounts and access to the Ascension servers.  Defendants have failed and refused to exercise such supervision and control to limit infringement to the extent required by law.  As a direct and proximate result of such refusal, users of Project Ascension have infringed Blizzard's copyrights in WoW.

Mitchell
Silberberg &
Knupp LLP

21613085.3

37

**COMPLAINT**

107.   Defendants derive a direct financial benefit from this infringement, including, but not limited to, money received from the sale of "Donation Points" by users of Project Ascension.

108.   Each such infringement by users of Project Ascension constitutes a separate and distinct act of infringement.

109.   Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

110.   As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

111.   Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

112.   As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT V

### Violation of the Digital Millennium Copyright Act

113.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 112, inclusive, and incorporates them by reference herein.

114.   Blizzard's official WoW Client contain technical measures that effectively control access to the WoW dynamic virtual world, including technical measures designed to ensure that the WoW Client only connects to Blizzard's

Mitchell
Silberberg &
Knupp LLP

21613085.3

38

**COMPLAINT**

official WoW Servers.  In their normal course of operation, it is not possible to play WoW on servers other than the official, authorized WoW Servers.  These technical measures also protect against piracy, because it also is not possible to play WoW using a pirated or modified copy of the WoW Client software.

115.   In creating the Ascension Client, Defendants removed, deactivated, bypassed, or otherwise circumvented Blizzard's access and copy control technology.  Only by doing so is it possible for players to use pirated, modified versions of the WoW Client software to connect to the unauthorized Ascension Servers.

116.   Additionally, the Ascension Client contains technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners.  Defendants market Project Ascension and the Ascension Client with knowledge of its use to circumvent Blizzard's technological access controls and copyright protection.

117.   As a result of the foregoing, Defendants (1) have circumvented Blizzard's access and copy control technology in violation of 17 U.S.C. § 1201(a)(1), and (2) are offering to the public, providing, or otherwise trafficking in technology in violation of 17 U.S.C. §§ 1201(a)(2) and (b)(1).

118.   Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Blizzard.

119.   Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

120.   Defendants' conduct has caused damage to Blizzard and has unjustly enriched Defendants, in an amount to be proven at trial.

121.  As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to violate Section 1201 of the DMCA.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

122.  As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. §1203(c), Blizzard is entitled to profits attributable to Defendants' violations of 17 U.S.C § 1201.

123.  Alternatively, Blizzard is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c), in the amount of $2,500 with respect to each act of circumvention, device, product, component, offer, or performance of service.

124.  Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT VI

### Intentional Interference with Contractual Relations

125.  Blizzard realleges each and every allegation set forth in Paragraphs 1 through 124, inclusive, and incorporates them by reference herein.

126.  As described herein, before playing the game, licensed users of WoW must first assent to the EULA, thereby creating contracts between the users and Blizzard.  Blizzard is informed and believes, and on that basis alleges, that users of Project Ascension have assented to the EULA.

127.  Blizzard's contracts with its users are valid and enforceable.

128.  Blizzard is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Blizzard and its users, and additionally are aware of the EULA by virtue of their own personal Battle.net accounts and experience playing WoW.  Defendants specifically are acutely aware

Mitchell
Silberberg &
Knupp LLP

21613085.3

40

**COMPLAINT**

that the EULA prohibits WoW players from using emulated servers and from downloading and installing unauthorized versions of WoW. Nevertheless, Defendants intentionally induce users of WoW to play Project Ascension in breach of WoW users' contracts with Blizzard.

129. By inducing licensed users to breach their contracts with Blizzard, Defendants intentionally interfere with the contracts between Blizzard and licensed users of WoW.

130. Defendants' actions were committed willfully and knowingly. Defendants knowingly induced breaches with an improper motive, namely, to profit from "donations" or other fees received from players of Project Ascension. Defendants also engaged in several independently wrongful acts in furtherance of their interference, including copyright infringement, trademark infringement, violation of the RICO statute, and trafficking in circumvention software, as set forth herein.

131. As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including, but not limited to, lost revenue and reputational damage.

132. Defendants' intentional interference with the contracts between Blizzard and its licensed users entitles Blizzard to injunctive relief and compensatory damages and other available relief.

## COUNT VII
### False Designation of Origin, 15 U.S.C. § 1125(a)

133. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 132, inclusive, and incorporates them by reference herein.

134. Blizzard owns all common law rights and holds multiple United States and international registrations in trademarks related to the WoW game, including in the "WORLD OF WARCRAFT" and "WOW" name and distinctive WoW logo,

Mitchell
Silberberg &
Knupp LLP

21613085.3

41

**COMPLAINT**

including but not limited to U.S. trademark registration nos. 2972619, 2877945, 3278939, 4071311, 4077617 (the "WoW Marks").

135. By virtue of Blizzard's continuous and extensive use in commerce of the WoW Marks, they have acquired secondary meaning in the marketplace in connection with Blizzard's goods and services. Specifically, the WoW Marks have become closely associated with Blizzard and its high-quality video games.

136. Defendants have used the WoW marks and confusingly similar versions of the WoW Marks extensively on the Project Ascension Website, the Project Ascension social media (including YouTube) accounts, and the Project Ascension servers. Moreover, Defendants have used the WoW Marks in a manner that suggests to members of the public that Project Ascension and its infringing content are licensed, authorized, sponsored, or otherwise endorsed by Blizzard.

137. For example, Defendants have incorporated their "Mysteries of Azeroth" "expansion" name into the WoW logo on their website and in the Project Ascension game, as illustrated below (Blizzard's actual WoW logo is on the left; Project Ascension's infringing logo is on the right):

 

138. Defendants' actions constitute a use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants' products and

services with Blizzard, or as to the origin, sponsorship, or approval of the goods and services provided by Defendants in violation of 15 U.S.C. § 1125(a).

139. Blizzard is entitled to the relief provided by 15 U.S.C. § 1117(a), including, but not limited to, Defendants' profits, Blizzard's damages, and the costs of this action.

140. Defendants knew of Blizzard's rights, and their infringement has been knowing, willful, and deliberate, such that the Court should award Blizzard its attorneys' fees pursuant to 15 U.S.C. § 1117.

141. Defendants' activities have damaged, and threaten to continue damaging, Blizzard's reputation and goodwill.

142. Blizzard has been, and continues to be, damaged by such acts in a manner that cannot be fully measured or compensated in economic terms and therefore has no adequate remedy at law. Furthermore, upon showing a violation of 15 U.S.C. § 1125(a), Blizzard is entitled to a rebuttable presumption of irreparable harm from that violation, and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT VIII

### FEDERAL CIVIL RICO – Conduct or Participation in an Enterprise
### (18 U.S.C. § 1962(c))

143. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 142, inclusive, and incorporates them by reference herein.

144. Each individual or corporate Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

145. Each Defendant violated 18 U.S.C. § 1962(c) by the acts and conduct described above, and further described below, and Blizzard was injured as a result.

Mitchell
Silberberg &
Knupp LLP

21613085.3

43

**COMPLAINT**

146. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

**The Enterprise**

147. Defendants together form an association-in-fact enterprise in the pursuit of a common and continuing purpose, *i.e.*, the development, marketing, sale and distribution of Project Ascension, which allows users to access unauthorized modified copies and adaptations of both Blizzard's protected client software and WoW Servers in violation of the Copyright and Lanham Acts as well as Blizzard's EULA.

148. Defendants are members of a development, sales and trafficking enterprise, *i.e.,* "the Enterprise" as described above and herein, through which Project Ascension is created, marketed, sold and distributed. Defendants coordinate and work together in order to pursue and carry out the Enterprise's purpose.

149. In order to choreograph and carry out the conduct of the Enterprise, Defendants necessarily must, and do, establish relationships among their group as members of the Enterprise in order to carry out a common course of conduct, *i.e.,* a sophisticated and lucrative development and sales operation. Defendants coordinate their efforts to market and distribute Project Ascension both from and to the United States. Defendants together have created a website, as well as online forums or message boards using services and platforms based in the United States, in order to coordinate their promotion and sales of Project Ascension, as well as to provide users of the Project Ascension Servers with consistent and aligned "customer support" and "technical support" in the United States to U.S. users of Project Ascension.

150. The Defendants have operated the enterprise with the longevity sufficient for them to form and pursue a common and consistent purpose of making money from users' continued access of Project Ascension Client and Servers. The

Mitchell
Silberberg &
Knupp LLP

21613085.3

44

**COMPLAINT**

Defendants have together operated and acted through the Enterprise for at least five years, selling and offering Project Ascension to many thousands of users during that time.

151.   The Enterprise described herein thus constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

152.   The Enterprise has engaged in, and their activities have affected, interstate, and even foreign, commerce.  Blizzard is informed and believes, and on that basis alleges, that the Enterprise's marketing hub is located within, and directed from, Nashville, Tennessee and/or Akron, Ohio, where Powell and Mannion reside and operate Project Ascension.  Defendants, working with and through Powell and Mannion, have encouraged thousands of members of the public to undertake thousands of sale transactions (misleadingly termed "donations") across multiple state lines in order to distribute Project Ascension to users all over the United States and around the world.

## **Pattern of Racketeering Activity**

153.   The Enterprise is engaged in the conduct of Defendants' affairs through a continuing pattern of racketeering activity.  Defendants, each of whom are separate persons associated with, or employed by, the Enterprise, have and continue to knowingly, willfully and unlawfully conduct or participate in, directly or indirectly, the affairs of the Enterprise through this racketeering activity within the meaning 18 U.S.C. § 1961(1), 1961(5) and 1962(c).

154.   The racketeering activity was effectuated, carried out and/or made possible by Defendants' regular and repeated use of the resources of the Enterprise. Those resources include the creation of, and access to: unauthorized modified copies of WoW Client software and servers; a trove of common marketing and promotional materials; social media accounts; shared, common instructions and educational materials sufficient to allow users to download and access the

Mitchell
Silberberg &
Knupp LLP

21613085.3

45

**COMPLAINT**

unauthorized Ascension Client; and the provisions of uniform technical, customer, and payment support to the many millions of users of Project Ascension, both in the U.S. and abroad.

155.   Defendants' acts of racketeering activity were, and are, related and continuous; the Enterprise is a well-coordinated marketing machine.  Defendants work together to continuously sell and promote Project Ascension.  A network of Defendants have perpetuated the same steps as across millions of instances of marketing, sales, distribution, and support regarding, Project Ascension vis-à-vis numerous separate U.S. customers.

156.   Defendants' repeated conduct has occurred for years is ongoing, and there is a continued threat of repetition of such conduct.

### Predicate Act of Racketeering Activity

157.   Defendants' conduct constitutes predicate acts of racketeering activity within the meaning of indictable offenses listed within 18 U.S.C. § 1961(1)(B), as more specifically alleged below.  Defendants each committed at least two such acts or assisted, aided and abetted such acts.

### Violation of 18 U.S.C. § 2320 (relating to trafficking in goods or services bearing counterfeit marks)

158.   Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2320.

159.   In violation of § 2320(a)(1), Defendants together operate an enterprise that traffics in computer software and services that knowingly and prominently use and display a "counterfeit mark," here an unauthorized copy of the WoW Marks.

160.   Specifically, Defendants' Project Ascension Website, social media accounts and copied client software are replete with spurious marks that constitute "counterfeit marks" within the meaning of 18 U.S.C. § 2320(f)(1) because they

are: used in order to market and traffic Project Ascension; identical or confusingly similar to the Blizzard's registered WoW Marks and Blizzard Marks; used in connection with the same goods and services for which the mark is registered, *i.e.*, computer software and related entertainment services; and the use of the WoW Marks is highly likely to cause confusion.

161.   As alleged herein, Blizzard has suffered harm, and been injured in, the United States.  Blizzard's principal place of business is in California, and the realization and receipt of revenues lost by users who have been diverted to Project Ascension in order to avoid paying subscription fees, both worldwide and in the United States, would have been realized in California.

**Violation of 18 U.S.C. § 2319 (relating to criminal infringement of a copyright)**

162.   Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2319.

163.   As alleged herein and in violation of 17 U.S.C. § 506(a)(1)(A) and (B), Defendants together willfully infringed Blizzard's copyrighted works, including the WoW Client software and the dynamic virtual WoW world both for purposes of private financial gain and by the unauthorized reproduction and modification by electronic means of those copyrighted works, which have a total retail value far in excess of $1,000.

164.   As alleged herein, Blizzard has suffered harm, and been injured in, the United States.  Blizzard's principal place of business is in California, and the realization and receipt of revenues lost by users who have been diverted to Project Ascension in order to avoid paying subscription fees, both worldwide and in the United States, would have been realized in California.

Mitchell
Silberberg &
Knupp LLP

21613085.3

47

**COMPLAINT**

## COUNT IX

## FEDERAL CIVIL RICO – Conspiracy

## (18 U.S.C. § 1962(d))

165.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 164, inclusive, and incorporates them by reference herein.

166.   In violation of 18 U.S.C § 1962(d), Defendants knowingly, willfully and unlawfully conspired and continue to conspire to facilitate and carry out the above-described Enterprise, which includes the operation of the Enterprise through a pattern of racketeering activity as alleged herein.

167.   The conspiracy is ongoing.

168.   The purpose of Defendants' conspiracy was, and is, the development, marketing, sale and distribution of Project Ascension, which allows users to access unauthorized modified copies and adaptations of both Blizzard's protected client software and WoW Servers in violation of the Copyright and Lanham Acts as well as Blizzard's EULA.

169.   Upon information and belief, each Defendant committed at least one overt act in furtherance of the conspiracy, including *inter alia* coding and developing Project Ascension, providing customer, sales and technical support to U.S. users of Project Ascension, and marketing and promoting Project Ascension.

170.   The purpose of Defendants' acts was to advance the overall object of the conspiracy, which in turn was to undertake and promote mass-scale misappropriation of Blizzard's protected copyrights and trademarks.

171.   Blizzard has been, and continues to be, damaged in the United States as a direct and proximate result of Defendants' participation in such conduct. Blizzard has suffered the loss of revenues from hundreds of thousands of users who have been diverted to Project Ascension in order to avoid paying subscription fees, both worldwide and in the United States.

Mitchell
Silberberg &
Knupp LLP

48

**COMPLAINT**

21613085.3

## **PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including, but not limited to, an Order:

1.    Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (i) infringing Blizzard's copyrighted works; (ii) inducing or contributing to third-party infringements of Blizzard's copyrighted works; (iii) trafficking in circumvention devices; and (iv) intentionally interfering with Blizzard's contracts with players.

2.    Requiring Defendants to shut down Project Ascension, the Ascension Servers, and any colorable copy thereof, hosted at any domain, address, location, or ISP.

3.    Requiring Defendants to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein, including all versions of the Ascension Client.

4.    Requiring Defendants to provide Blizzard with an accounting of any and all monies collected in connection with products or services that infringe or violate any of Blizzard's rights described herein.

5.    Awarding Blizzard monetary relief, including damages sustained by Blizzard in an amount not yet determined, including actual or statutory damages for copyright infringement, willful copyright infringement, and trafficking in circumvention devices under 17 U.S.C. § 504 and § 1203 and other applicable laws as appropriate.

6.    Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and § 1203 and other applicable laws.

Mitchell
Silberberg &
Knupp LLP

21613085.3

49

**COMPLAINT**

7.     Awarding such other and further relief as this Court may deem just and appropriate.

DATED: June 12, 2026              MARC E. MAYER
                                  MARISSA B. LEWIS
                                  MITCHELL SILBERBERG & KNUPP LLP


                                  By: /s/ Marc E. Mayer
                                      Marc E. Mayer
                                      Attorneys for Blizzard Entertainment, Inc.

## JURY DEMAND

Blizzard demands a trial by jury on all issues so triable.

DATED: June 12, 2026

MARC E. MAYER
MARISSA B. LEWIS
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Marc E. Mayer*
Marc E. Mayer
Attorneys for Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

21613085.3

51

**COMPLAINT**