MARC E. MAYER (SBN 190969)
  mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*pro hac vice pending*)
  mbl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, NY 10022
Telephone: (212) 509-3900

Attorneys for Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEREK S. POWELL a/k/a "Dutch," "Zen," "Sin," "Sal," "Valhalla," and "Salmaer"; BRYAN THOMAS MANNION a/k/a "Kaladin"; EXALTED MANAGEMENT SERVICES, a Nevada Corporation; EXALTED MANAGEMENT AND CONSULTATION SERVICES LLC, a New Mexico Limited Liability Company; LINCOLN MARSHALL SIMPSON a/k/a "twotailedtitan"; BRIEN ALLEN MIDDAUGH a/k/a "worldforgerzen"; ANDREW JAMES SEWARD a/k/a "andrew6180"; ALEXANDER STEVEN KOZMA a/k/a ".grey001"; YE LWIN a/k/a "kalethuzad"; ONLINE MANAGEMENT PARTNERS, an entity of unknown form; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 8:26-cv-01506-JWH-DFM<br><br>[Assigned to Judge John W. Holcomb]<br><br>***EX PARTE* APPLICATION OF PLAINTIFF BLIZZARD ENTERTAINMENT, INC. FOR LIMITED EARLY DISCOVERY**<br><br>Complaint Filed: June 12, 2026 |

Mitchell
Silberberg &
Knupp LLP

21636940.4

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

## NOTICE OF *EX PARTE* APPLICATION

PLEASE TAKE NOTICE that Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby applies *ex parte* pursuant to Federal Rule of Civil Procedure 26(d) and Local Rule 7-19 for leave to serve thirteen subpoenas necessary for Blizzard to confirm that the named Defendants are appropriately named in this action, to elicit the identities of unnamed "Doe" Defendants, and to discover whether there are additional necessary parties that must be named in this action.

The Defendants in this action, including the "Doe" Defendants, operate, oversee, provide services for, or otherwise participate in an online business venture called "Project Ascension," by which Defendants distribute—and encourage and enable members of the public to copy and play—an unauthorized version of Blizzard's highly popular computer role-playing game *World of Warcraft* ("*WoW*"), without possessing a licensed copy of the game. *See* Dkt. No. 1 ("Complaint" or "Compl.") ¶¶ 4-5. The Defendants in this action have been, *inter alia*, distributing infringing copies of *WoW* computer software on a massive scale, creating unauthorized derivative works of *WoW*, disabling or circumventing security features integrated into the *WoW* software, and marketing their service using Blizzard's distinctive trademarks. *Id*. ¶¶ 8, 11.

Blizzard's investigation has revealed that numerous entities and individuals are independently and directly engaged in distributing infringing Project Ascension software, maintaining or administering the related website ascension.gg (the "Ascension Website"), providing technical support or assistance, and/or assisting with the development of Project Ascension. *Id*. ¶¶ 19-29. Through this investigation, Blizzard has identified the seven individuals and three entities named as Defendants. Blizzard has reason to believe that other individuals or entities also have engaged in unlawful activities, but has been unable to determine the true names and capacities of these individuals or entities prior to filing this lawsuit.

Mitchell
Silberberg &
Knupp LLP

2

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

In order for Blizzard to obtain the relief it seeks, and to ensure that all appropriate parties are included as Defendants in this lawsuit, expedited third-party discovery is necessary to confirm the identities of the named Defendants and to identify the Doe Defendants as well as any additional unnamed parties. Specifically, Blizzard seeks leave to serve limited subpoenas upon the following entities: (1) Google LLC d/b/a YouTube; (2) X Corp.; (3) ByteDance Ltd. d/b/a TikTok; (4) GitHub, Inc.; (5) Discord, Inc.; (6) Meta Platforms, Inc. d/b/a Facebook; (7) LinkedIn Corporation; (8) PayPal Holdings, Inc.; (9) Paymentwall, Inc.; (10) Namecheap, Inc.; (11) Cloudflare, Inc.; (12) Nevada Business Corporations; and (13) Charleen Fulton.

Good cause exists for the requested limited discovery. This case involves claims for copyright infringement, trademark infringement, violation of the anti-circumvention provisions of the Digital Millennium Copyright Act ("DMCA"), intentional interference with contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). These claims are supported by law and easily will be proven. Blizzard has conducted an extensive and diligent investigation and has concluded that (1) subpoenas are necessary to confirm the identities of the named Defendants, identify the Doe Defendants, and confirm the identities of any additional necessary parties, and (2) the entities identified in the proposed subpoenas attached are in possession of critical information that will either disclose the foregoing information or lead to the discovery thereof. Accordingly, Blizzard requests limited early discovery to identify the Doe Defendants and ensure that all such persons or entities are named in the action.

This Application is made on an *ex parte* basis, because if Blizzard is required to bring a noticed motion, it is likely that it will not obtain the requested information for at least several months. Blizzard then would be required to amend its Complaint and locate and serve any new or additional parties. As a result, without the requested expedited relief, this case potentially would be delayed for many months. A court

Mitchell
Silberberg &
Knupp LLP

3

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

in this District recently permitted Blizzard the exact type of discovery it seeks here, in a case involving very similar factual circumstances. *See Blizzard Entm't, Inc. v. Turtle Wow et al.*, No. 2:25-CV-08194-SVW-SK, Dkt. No. 28 (C.D. Cal. Oct. 22, 2025).  The Court likewise should allow such discovery here.

No counsel for Defendants has appeared in the case and thus Blizzard is unable to provide notice of this *Ex Parte* Application pursuant to Local Rule 7-19.1.

This Application is based upon this Notice, the attached Memorandum of Points and Authorities, the attached supporting Declaration of Marc E. Mayer and accompanying exhibits, the Complaint in this action, and such other and further oral or documentary evidence and legal memoranda as may be presented at or before any hearing on this Application.

DATED: June 26, 2026

MARC E. MAYER
MARISSA B. LEWIS
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Marc E. Mayer*
　　Marc E. Mayer
　　Attorneys for Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

4

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

# TABLE OF CONTENTS

NOTICE OF *EX PARTE* APPLICATION ........................................................................2

TABLE OF CONTENTS ..............................................................................................5

TABLE OF AUTHORITIES..........................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES..........................................8

I.       INTRODUCTION.............................................................................................8

II.      STATEMENT OF FACTS................................................................................10

III.     BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE LIMITED THIRD-PARTY DISCOVERY. ..................................................................15

         A.      The Requested Discovery Will Identify Specific Individuals and Entities Who are Subject to Jurisdiction in This Court. ....................16

         B.      Blizzard Has Taken Reasonable Steps to Locate and Identify the Defendants.................................................................................19

         C.      Blizzard's Claims Will Withstand a Motion to Dismiss. ...................19

         D.      The Requested Discovery is Likely to Reveal the Identities of the Defendants.................................................................................23

         E.      The Need for the Requested Discovery Outweighs Any Conceivable Prejudice to Defendants. ...............................................23

IV.      CONCLUSION .................................................................................................25

Mitchell Silberberg & Knupp LLP

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

# TABLE OF AUTHORITIES

### CASES

*Activision Publ'g, Inc. v. EngineOwning UG*,
No. CV 22-0051-MWF (JCX), 2023 WL 3272399 (C.D. Cal. April 4, 2023) ..................................................................................................22

*Adobe Sys. Inc. v. One Stop Micro, Inc.*,
84 F. Supp. 2d 1086 (N.D. Cal. 2000)................................................21

*American LegalNet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009)..............................................15

*Blizzard Ent., Inc. v. Bossland GmbH*,
No. SACV161236DOCKESX, 2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ..................................................................................................18

*Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006 (C.D. Cal. 2013)................................................22

*Blizzard Entm't, Inc. v. Joyfun Inc Co., Ltd.*,
No. SACV191582JVSDFMX, 2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ..................................................................................................18

*Blizzard Entm't, Inc. v. Turtle Wow et al.*,
No. 2:25-CV-08194-SVW-SK (C.D. Cal. Oct. 22, 2025) ............................4, 16

*Calder v. Jones*,
465 U.S. 783 (1984) ..........................................................................19

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993)..............................................................19

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010)..............................................18

*Davidson & Assocs., Inc. v. Internet Gateway*,
334 F. Supp. 2d 1164 (E.D. Mo. 2004)..............................................21

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) .............................................................16

*Hallet v. Morgan*,
296 F.3d 732 (9th Cir. 2002) .............................................................15

Mitchell
Silberberg &
Knupp LLP

6

*Knapp v. Americredit Fin. Servs., Inc.*,
  204 F.R.D. 306 (S.D. W.Va. 2001) ....................................................................23

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. Ariz. 2010)....................................................................21

*Nexon Am., Inc. v. S.H.*,
  No. CV 10-9689 PA (JCX), 2011 WL 13217951 (C.D. Cal. Dec. 13,
  2011) ...........................................................................................................20, 21

*NobelBiz, Inc. v. Wesson*,
  No. 14CV0832 W JLB, 2014 WL 1588715 (S.D. Cal. Apr. 18, 2014) .............15

*Rose v. Abraham*,
  No. 1:08CV00606-AWI-SMS, 2008 WL 3540542 (E.D. Cal. Aug. 13,
  2008) ..................................................................................................................13

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) .................................................................15, 23

*Skout, Inc. v. Jen Processing, Ltd.*,
  No. 14-CV-02341-JSC, 2015 WL 224930 (N.D. Cal. Jan. 15, 2015) ........*passim*

*UMG Recordings, Inc. v. Doe*,
  No. C 08-1038 SBA, 2008 WL 2949427 (N.D. Cal. July 30, 2008) ................15

*UMG Recordings, Inc. v. Doe*,
  No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008)............16, 24

**RULES & STATUTES**

17 U.S.C. § 106.......................................................................................................20

17 U.S.C. § 501.......................................................................................................20

17 U.S.C. § 1201.....................................................................................................21

18 U.S.C. § 1962.....................................................................................................22

**OTHER AUTHORITIES**

Press Release, *U.S. Department of the Treasury, Treasury Sanctions Global
  Bulletproof Hosting Service Enabling Cybercriminals and Technology
  Theft* (July 1, 2025), available at https://home.treasury.gov/news/press-
  releases/sb0185 ...................................................................................................8

Mitchell
Silberberg &
Knupp LLP

*EX PARTE* **APPLICATION FOR LIMITED EARLY DISCOVERY**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This lawsuit arises from the intentional and massive infringement of the intellectual property rights of Plaintiff Blizzard Entertainment, Inc. ("Blizzard") by a group of entities and individuals doing business as "Project Ascension" (collectively, "Defendants").  Blizzard is the developer, publisher, and owner of some of the most popular video games in the world, including the immensely popular online role-playing game *World of Warcraft* ("*WoW*").  Defendants own and operate unauthorized "private" or "emulated" servers, which are programmed to circumvent Blizzard's security measures and allow members of the public to play modified versions of *WoW* without Blizzard's authorization.  In the ordinary course of business, Defendants have distributed, and are continuing to distribute, millions of pirated copies of Blizzard's copyrighted *WoW* software.  Defendants also have used Blizzard's videos, screen captures, artwork, and other *WoW*-related assets to market Project Ascension, in violation of Blizzard's valuable, protected intellectual property rights.

Like many unlawful online business ventures, Defendants operate in the shadows, using anonymous online aliases, private chat channels, Internet proxy or masking services, invite-only channels on social media networks, and online financial services in order to hide their identities and minimize their online footprints.  Underscoring Defendants' extraordinary efforts to conceal their identities, Blizzard has reason to believe that Defendants' Ascension Servers are hosted on "bulletproof" servers associated with the Aeza Group, which the U.S. Department of the Treasury has sanctioned "for its role in supporting cybercriminal activity targeting victims in the United States and around the world," including by selling "access to specialized servers and other computer infrastructure designed to help cybercriminals … evade detection and resist law enforcement attempts to disrupt their malicious activities."  Press Release, *U.S. Department of the Treasury,*

Mitchell
Silberberg &
Knupp LLP

8

*EX PARTE* **APPLICATION FOR LIMITED EARLY DISCOVERY**

*Treasury Sanctions Global Bulletproof Hosting Service Enabling Cybercriminals and Technology Theft* (July 1, 2025), available at https://home.treasury.gov/news/press-releases/sb0185.

Defendants' conduct has caused, and is continuing to cause, significant monetary and reputational harm to Blizzard and its products. Accordingly, by this Application, Blizzard requests leave of court to issue certain narrowly-tailored third party subpoenas designed to confirm that the named Defendants are appropriately named in this action, to elicit the identities of unnamed "Doe" Defendants who Blizzard has reason to believe are involved in the operation of Project Ascension, and to discover whether there are additional necessary parties that must be named in this action. The requested subpoenas are directed to social media platforms, payment processors, a domain name registrar, a website hosting company, a corporate registration company, and a Nevada-based individual who is listed as the sole corporate officer of one of the corporate defendants but likely is merely a strawman whose name is used to hide the identities of the actual owners and operators.

Good cause exists for this request. Through its extensive pre-filing investigation, Blizzard has reason to believe that the specific individuals and entities named in the Complaint are involved in the development, operation, promotion, and distribution of Project Ascension, including the related website ascension.gg (the "Ascension Website") and servers (the "Ascension Servers"). However, because Blizzard's investigation has been limited to publicly available information, third-party discovery is the only way that Blizzard can verify the results of its investigation. Additionally, such third-party discovery is necessary to identify the Doe Defendants and any other individuals who are actively and deliberately engaged in conduct intended to harm Blizzard. In other words, the only way to ensure that all necessary parties are included in this lawsuit (and have been served) is to seek circumscribed early discovery. To be clear, by the subpoenas requested herein

Mitchell
Silberberg &
Knupp LLP

9

Blizzard is *only* seeking information necessary to discover or confirm the *identities* of the individuals involved in Project Ascension; it is not seeking the *content* of any email correspondence, chat logs, or other documentation.

There will be no prejudice to any of the Defendants (named or unnamed) if the requested discovery is permitted. The requested discovery is quite limited, and Blizzard would be entitled to this discovery in the normal course of this action. In addition, any online platforms will give notice to any impacted party, who will have a full opportunity to object or move to quash, if he or she so elects. (And, of course, any Doe Defendant who is identified and added as a named defendant will have a full opportunity to present his or her defenses to the merits of the claims.) Should any additional discovery be required, Blizzard will seek leave of Court to serve that discovery.

## II.    STATEMENT OF FACTS

Blizzard is a video game developer and publisher, and the owner of all rights, title, and interest in the immensely popular online video game titled *World of Warcraft* ("*WoW*"). *See* Dkt. No. 1 ("Complaint" or "Compl.") ¶ 1. In this lawsuit, Blizzard has asserted intellectual property and related claims—including claims for copyright infringement, trademark infringement, violation of the anti-circumvention provisions of the Digital Millennium Copyright Act ("DMCA"), intentional interference with contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")—in connection with a group of unauthorized "private" or "emulated" servers known as "Project Ascension."

Defendants all are participants in a common enterprise dedicated to the Project Ascension private server network and overall business (the "Enterprise"). *See* Compl. ¶¶ 4, 10, 48-51. Via the Project Ascension Enterprise, Defendants encourage and enable members of the public to access and play *WoW* without Blizzard's authorization and without possessing a licensed copy of the game. *Id*. ¶¶ 4-5, 8-9, 19, 52-53, 90. In the normal course of business, Defendants have, *inter alia*,

Mitchell
Silberberg &
Knupp LLP

10

distributed infringing copies of *WoW* on a massive scale, created unauthorized derivative works of *WoW*, disabled or circumvented security features integrated into the *WoW* software, and marketed and advertised their services and software using Blizzard's distinctive artwork and trademarks. *Id*. ¶¶ 4-5, 7-9, 53-54, 56. Project Ascension is a for-profit business, which generates revenue by soliciting monetary "donations" from its users in exchange for in-game rewards. *Id.* ¶ 57.

Blizzard filed this lawsuit on June 12, 2026 against three entities, seven individuals, and Does 1 through 10, inclusive, whose identities are unknown to Blizzard (the "Doe Defendants"). Immediately after the Complaint was filed, this lawsuit received extensive press attention, and stories about the lawsuit were published in online publications such as *Complex*, *PC Gamer*, and *Games Industry.biz*. *See* Declaration of Marc Mayer ("Mayer Decl.") ¶ 10. Additionally, Project Ascension customers have been extensively discussing the lawsuit in several online communities dedicated to Project Ascension, including on platforms like Reddit. *See Id*.

The participants in the Project Ascension Enterprise conduct business entirely through anonymous online handles. For example, the owner and driving force behind the Enterprise is an individual that has gone by the name "Dutch." The other owners, operators, and administrators of the website use names such as "Kaladin," "twotailedtitan," "worldforgerzen," "andrew6180," ".grey001," and "kalethuzad." The Ascension Website (located at ascension.gg) does not disclose the real names of any of the people that are responsible for operating the Ascension Servers or collecting money on behalf of the Project Ascension Enterprise. Likewise, all "customer service" activities are performed by anonymous individuals under their usernames.

Prior to filing this lawsuit, Blizzard conducted an extensive investigation in an effort to identify the owners and operators of Project Ascension. *See* Mayer Decl. ¶ 3. That investigation necessarily was limited, because Blizzard and its

investigators were required to rely on publicly available information. *Id.* ¶ 5. Nevertheless, Blizzard was able to identify at least some of the individuals who operate the Project Ascension Enterprise, as well as certain corporate details regarding three companies associated with the Enterprise, namely, Exalted Management Services, Exalted Management and Consultation Services LLC, and Online Management Partners. *Id.* ¶ 6. However, since Blizzard did not have access to any internal party or third-party documents, Blizzard cannot be certain that these individuals and entities are properly named or that it has identified all of the necessary defendants.

Additionally, despite its best efforts, Blizzard has not been able to discover the real names of several other individuals, such as those using the aliases: "zamasu1977," "caras0001," "broicantcomeupwiththeusername," "bert00001," "reaperskippy0001," "kitey0001," "boch0001," "orinoa," "vlathis," "chasingthegoose," "jonas2881," "mewmix," "minxnobody," "pigmyrhino," and "drrileyj." *Id.* ¶ 7. Blizzard has reason to believe that all of these aliases correspond to real persons who play direct roles in the Project Ascension Enterprise and the operation of Project Ascension. *Id.* Blizzard's investigators have exhausted all reasonable efforts to identify these defendants using the data and resources available to them.

**The Requested Discovery.** As discussed above, Blizzard's pre-filing investigation disclosed that Defendants use a variety of online service providers to engage in their various activities related to Project Ascension. These service providers include social media platforms, payment processors, a domain name registrar, and a website hosting company. Blizzard has reason to believe that each of these online service providers possesses critical information that will enable Blizzard to confirm that it has correctly ascertained the identities of the named Defendants, to elicit the identities of unnamed "Doe" Defendants who Blizzard has reason to believe are involved in the operation of Project Ascension, and to discover

Mitchell
Silberberg &
Knupp LLP

12

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

whether there are additional necessary parties that must be named in this action. The requested third-party discovery falls into the following categories:

**1.    Social Media Platforms.**    Defendants use several social media networks and platforms to advertise Project Ascension, communicate with customers, and announce updates. *See* Mayer Decl. ¶ 12. For example, Defendants possess accounts on YouTube, X (formerly known as Twitter), TikTok, Discord, Facebook, and LinkedIn, which they use to promote Project Ascension and otherwise communicate their activities to the public. *See id.* ¶ 12(a)-(c), (e)-(g). These social media platforms require users to create an account by providing names and valid email addresses. They also keep records of IP addresses used to create and access these accounts. Accordingly, Blizzard expects that subpoenas to these platforms will yield critical information that will greatly assist Blizzard in confirming the identities of the named Defendants and identifying the Doe Defendants and any other unnamed defendants involved with Project Ascension.

**2.    GitHub Code Repositories.**    Defendants operate or contribute to repositories of computer code related to Project Ascension. *Id.* ¶ 12(d). These code repositories are maintained by GitHub. GitHub allows members of the public to upload and share computer code and modify or improve code uploaded by others. There are two GitHub repositories associated with Project Ascension. *Id.* GitHub users must register accounts with the service, and thus GitHub will be in possession of relevant identifying information.

**3.    Payment Processors.**    Defendants use various online payment processors to sell Project Ascension to the public. *Id.* ¶ 12(h). Defendants also may use these payment processors to transfer money between and among themselves. Among the payment processors used by Defendants are PayPal Holdings, Inc. and Paymentwall, Inc. *Id.* Blizzard believes that these payment processors possess critical information about Defendants, including their names, email addresses, IP addresses, and other account information.

Mitchell
Silberberg &
Knupp LLP

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

**4.     Domain Name Registrar and Host.**  Defendants have registered the domain name for the Ascension Website through a domain registrar located in the United States, namely, Namecheap, Inc.  *Id.* ¶ 12(i).  Additionally, Defendants have engaged Cloudflare, Inc. to host the Ascension Website.  *Id.* ¶ 12(j).  Blizzard expects that these entities possess relevant information about Defendants, such as their names, addresses, email addresses, and IP addresses.

**5.     Corporate Registration Service and Business Advisor.**  Defendants work with a corporate registration and business consulting service, namely, Nevada Business Corporations.  Nevada Business Corporations formed Exalted Management Services and likely provided other corporate services to the owners and operators of Project Ascension.  *Id.* ¶ 12(k).  Nevada Business Corporations is owned by an individual, Wayne Wakefield, who claims to be a business advisor and offers advice to business owners as to how to structure corporations in a way that is designed to avoid tax and legal liability.  *Id.*  An individual named Charleen Fulton, who appears to be affiliated with Nevada Business Corporations, is listed as the sole officer of Exalted Management Services in corporate records.  *Id.*  Blizzard expects that Nevada Business Corporations, Mr. Wakefield, and Ms. Fulton each possess relevant information about Defendants, including the names of the individuals that instructed the formation of Exalted Management Services and paid Nevada Business Corporations for its services.  In addition, Blizzard expects that the discovery sought will reveal whether Nevada Business Corporations, Mr. Wakefield, and/or Ms. Fulton advised the Project Ascension Enterprise with knowledge of its illegal activities, such that they should be named as Defendants in this lawsuit.

*     *     *

Blizzard's request for the foregoing discovery is made in good faith and for the legitimate purpose of confirming the identities and roles of the named Defendants, identifying unknown individuals who have been pursued in this action as Doe Defendants, and identifying any other necessary parties that must be named

Mitchell
Silberberg &
Knupp LLP

14

in this action.  The proposed subpoenas will be narrow and limited to information that is relevant to the identification of those responsible for the development, operation, promotion, and distribution of Project Ascension.  Blizzard will provide the third parties with no less than twenty-one days to respond to the subpoenas and is prepared to work with any third parties to protect any private information (such as social security, bank account, or passport numbers).

## III.   BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE LIMITED THIRD-PARTY DISCOVERY.

District courts have broad discretion in scheduling discovery, including broad discretion to order expedited discovery prior to a Rule 26 conference.  *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  The court may authorize expedited discovery for "good cause."  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *accord American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009); *NobelBiz, Inc. v. Wesson*, No. 14CV0832 W JLB, 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014); *Rose v. Abraham*, No. 1:08CV00606-AWI-SMS, 2008 WL 3540542, at **2-3 (E.D. Cal. Aug. 13, 2008); *UMG Recordings, Inc. v. Doe*, No. C 08-1038 SBA, 2008 WL 2949427, at *3 (N.D. Cal. July 30, 2008) (collecting cases).

Good cause generally exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276.  In determining whether good cause exists for pre-service discovery, courts consider whether: "(1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able

Mitchell Silberberg & Knupp LLP

15

to identify the defendant through discovery such that service of process would be possible." *Skout, Inc. v. Jen Processing, Ltd.*, No. 14-CV-02341-JSC, 2015 WL 224930, at *2 (N.D. Cal. Jan. 15, 2015) (citations omitted).

As set forth below, good cause exists for the requested limited expedited discovery. Courts routinely allow early discovery to confirm the identities of named defendants and identify anonymous defendants such as the Doe Defendants in this action. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of [the] alleged defendant[] [is] not [] known prior to the filing of a complaint[,] … the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.") (citations omitted). Such discovery is especially appropriate where, as here, individuals pseudonymously or anonymously commit tortious acts over the Internet. *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) ("In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.") (citation omitted). Indeed, a court in this District recently permitted Blizzard the exact type of discovery it seeks here, in a case involving very similar factual circumstances. *See Blizzard Entm't, Inc. v. Turtle Wow et al.*, No. 2:25-CV-08194-SVW-SK, Dkt. No. 28 (C.D. Cal. Oct. 22, 2025). The Court likewise should allow such discovery here.

**A.    <u>The Requested Discovery Will Identify Specific Individuals and Entities Who are Subject to Jurisdiction in This Court.</u>**

Under the first factor, "the Court must examine whether the Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each

Mitchell
Silberberg &
Knupp LLP

16

Defendant is a real person or entity who would be subjected to jurisdiction in this Court." *Skout, Inc*, 2015 WL 224930, at *2 (citation omitted).

Blizzard's Complaint includes specific allegations that each of the Defendants, including the Doe Defendants, is a real individual (or entity) who has undertaken a demonstrated effort to develop, operate, promote, and distribute Project Ascension, assist customers in accessing and playing Project Ascension, give advice to customers as to how to operate and access Project Ascension, communicate to users about updates and improvements to Project Ascension, act as moderator and/or administrator of the Ascension Website, or otherwise facilitate the distribution and use of Project Ascension. *See* Compl. ¶¶ 19-29, 50, 72. Blizzard has identified a number of specific individuals, entities, and online aliases associated with Project Ascension, and has identified a discrete and specific discovery plan to confirm their identities and connection to Project Ascension. *See* Mayer Decl. ¶¶ 4, 6-7, 12-13. The online activity engaged in by Defendants is in service of promoting widespread sales and use of Project Ascension. Therefore, the requested third-party discovery is likely to uncover substantially more information about the Defendants. The requested discovery also will provide a tangible trail of evidence that will enable Blizzard to ascertain precisely who is behind Project Ascension and where they are located, so they may be identified, and if possible, named as defendants in this action.

Blizzard also has sufficiently alleged that the unnamed Doe Defendants are subject to the jurisdiction of this Court. *See* Compl. ¶¶ 13-16 (including specific allegations explaining why "all Defendants have, *inter alia,* engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and, among other things, purposefully have directed their activities at the United States and at California"); *see also Skout, Inc*, 2015 WL 224930, at *2 (finding that the allegations of the plaintiff's complaint showed personal jurisdiction over unnamed defendants). Without discovery, Blizzard cannot conclusively

Mitchell
Silberberg &
Knupp LLP

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

determine where the Defendants reside, but Blizzard is informed and believes that some or all of them may be located in the United States. *See* Compl. ¶¶ 20-26, 152. Regardless, when, as here, foreign individuals advertise and distribute malicious software products in the United States, knowing that the software will be used to disrupt the business activities of a United States company and interfere with contracts between the company and its customers (Compl. ¶ 15), they may be subject to personal jurisdiction in U.S. federal courts. *See, e.g., Blizzard Ent., Inc. v. Bossland GmbH*, No. SACV161236DOCKESX, 2017 WL 412262, at **5-6 (C.D. Cal. Jan. 25, 2017) (finding personal jurisdiction over German company selling World of Warcraft cheating software to U.S. customers); *Blizzard Entm't, Inc. v. Joyfun Inc Co., Ltd.,* No. SACV191582JVSDFMX, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) (finding personal jurisdiction over Hong Kong company "distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook") (citations omitted); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (finding personal jurisdiction over nonresident defendant that: (i) maintained commercial website that was interactive and open to California residents; (ii) knowingly and intentionally accessed and used the plaintiff's website and developed, marketed, and sold software for the sole purpose of enabling users to bypass the security measures of the plaintiff's website, in violation of its terms of use; and (iii) directly targeted California and knew that the plaintiff would suffer the brunt of its harm in California because the plaintiff was headquartered and maintained its website in California).

Blizzard's investigation also has revealed that Defendants contract with and extensively use a variety of entities located in the United States and the State of California, including social media platforms, payment processors, domain name companies. *See* Mayer Decl. ¶¶ 6, 12. Moreover, Defendants know that their conduct is causing harm to Blizzard in the United States (and the State of California

in particular); they have ignored communications from Blizzard regarding Project Ascension and have continued to engage in their unlawful activities without pause. *See* Compl. ¶¶ 15, 78; Mayer Decl. ¶¶ 9-11.

The foregoing is more than sufficient to establish specific personal jurisdiction over Defendants, including under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) (in tort cases, jurisdiction is appropriate where there are "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered – and which the defendant knows is likely to be suffered – in the forum state.").

## B. Blizzard Has Taken Reasonable Steps to Locate and Identify the Defendants.

"Under the second factor, the party should identify all previous steps taken to locate the elusive defendant." *Skout, Inc*, 2015 WL 224930, at *3 (citation omitted). As set forth above, Blizzard has conducted an extensive preliminary investigation, including with the assistance of an outside private investigative firm. *See* Mayer Decl. ¶ 3. This comprehensive investigation revealed that Defendants have taken steps to obscure their identities, including by operating using online aliases. *Id.* ¶¶ 4, 7; *see also* Compl. ¶¶ 11, 77. Blizzard cannot conclusively tie these online aliases to real names without additional information maintained by the above-described third parties. In order to collect core evidence in this case before it is lost or destroyed, Blizzard seeks early discovery to identify those unnamed individuals responsible for Project Ascension, including the Ascension Website and Ascension Servers.

## C. Blizzard's Claims Will Withstand a Motion to Dismiss.

Blizzard's claims are straightforward, strong, supported by relevant case law, and would easily survive a Motion to Dismiss.

Mitchell
Silberberg &
Knupp LLP

19

**Count I.** Blizzard is likely to prevail on its copyright infringement claim. *See* Compl. ¶¶ 80-87. Blizzard owns valid copyrights in *WoW*, including the very *WoW* client software that Defendants exploit in their operation of Project Ascension, as well as artwork, music, dialogue, characters, creatures, and environments used in *WoW*. *Id*. ¶ 81. Defendants have infringed Blizzard's copyrights in *WoW* by reproducing, adapting, and distributing *WoW*, including the copyrighted elements of the *WoW* client software, game server, and gaming environment, without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501. *Id*. ¶ 82; *Nexon Am., Inc. v. S.H.,* No. CV 10-9689 PA (JCX), 2011 WL 13217951, at **4-5 (C.D. Cal. Dec. 13, 2011) (operator of private server infringed plaintiff's copyright by distributing multiplayer game client).

**Count II-IV.** Blizzard also is likely to prevail on its inducement to infringe copyright (Compl. ¶¶ 88-95), contributory copyright infringement (*id.* ¶¶ 96-103), and vicarious copyright infringement (*id.* ¶¶ 104-112) claims, given that when users of Project Ascension in the United States download, install, and copy to their computers Project Ascension's modified client (the "Ascension Client"), such users also infringe Blizzard's copyrights in *WoW* in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501. *Id*. ¶¶ 89, 97, 105; *Nexon,* 2011 WL 13217951, at *5 ("It is undisputed that Defendant advertised RydahMS EXE on the Internet, instructed potential users how to download, install and use the server and modified client, and offered extensive technical support to his customers."). Blizzard has pointed to numerous examples in its Complaint of Defendants' active encouragement and inducement of users of Project Ascension to engage in copyright infringement, including providing users with copies of the Ascension Client and providing instructions, encouragement, and technical support on how to install the Ascension Client and play *WoW* without authorization from Blizzard. *See, e.g.*, Compl. ¶¶ 90, 98.

Mitchell
Silberberg &
Knupp LLP

20

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

**Count V.** Blizzard is likely to prevail on its claim for violation of the DMCA (*id.* ¶¶ 113-124), as the Ascension Client contains technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners. *Id.* ¶ 116. The Complaint explains, in detail, how the Ascension Client works to circumvent a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners. *See, e.g., id.* ¶¶ 65-67, 69-70, 115-116. The DMCA, particularly, 17 U.S.C. §§ 1201(a)(2) and (b), provides that no person shall offer to the public, provide, or otherwise traffic in such anti-circumvention technology. Blizzard's allegations are more than sufficient to state such a claim. *See, e.g., Nexon,* 2011 WL 13217951, at *6 (finding violation of the DMCA, where the defendant created a software program "to circumvent the [plaintiff's] authentication mechanisms … that would normally function to prohibit the playing of [the plaintiff's game] on an unauthorized server"); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 954 (9th Cir. Ariz. 2010) (affirming grant of permanent injunction under DMCA, where defendant created a software program to circumvent online computer game's anti-cheat program, which in normal operation would scan the player's computer RAM and confirm the absence of any "bots" or cheats); *Davidson & Assocs., Inc. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1173 (E.D. Mo. 2004) ("The bnetd emulator developed by the defendants always allows the Blizzard game to access Battle.net mode features even if the user does not have a valid or unique CD Key, because the bnetd emulator does not determine whether the CD Key is valid or currently in use by another player."), *aff'd sub nom.*, 422 F.3d 630 (8th Cir. 2005).

**Count VI.** Blizzard is likely to prevail on its intentional interference with contractual relations claim. *See* Compl. ¶¶ 125-132. Blizzard's End User License Agreements ("EULA") are valid and enforceable contracts under California law.

Mitchell
Silberberg &
Knupp LLP

21

*EX PARTE* **APPLICATION FOR LIMITED EARLY DISCOVERY**

*See Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089-93 (N.D. Cal. 2000) (end user license agreement valid under California law); *Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (granting summary judgment against hack maker for inducing breach of Blizzard's EULA).  Blizzard has alleged that Defendants are aware of these EULAs between Blizzard and its users, and intentionally induce such users to play Project Ascension via the Ascension servers in breach of those contracts.  *See* Compl. ¶¶ 9, 128-130.

**Count VII.**  Blizzard is likely to prevail on its Lanham Act claim for false designation of origin (Compl. ¶¶ 133-142), because Blizzard owns all common law rights and holds multiple United States and international trademark registrations related to the *WoW* game, including in the "WORLD OF WARCRAFT" and "WOW" names and in the distinctive *WoW* logo (collectively, the "WoW Marks").  *Id.* ¶ 134.  Blizzard has adequately alleged that the WoW Marks have acquired secondary meaning in the marketplace in connection with Blizzard's goods and services, given their extensive use in the marketplace and long-standing popularity among many millions of players.  *Id.* ¶ 135.  Blizzard has likewise pointed to multiple uses by Defendants of their protected WoW Marks on the Ascension servers, Ascension website, and related social media accounts.  *Id.* ¶¶ 136-137.

**Count VIII-IX.**  Finally, Blizzard is likely to prevail on its RICO claims, 18 U.S.C. §§ 1962(c) and 1962(d).  *See* Compl. ¶¶ 143-164 (participation in a RICO enterprise); *id.* ¶¶ 165-171 (engaging in a RICO conspiracy).  Blizzard has alleged that Defendants work together to operate a global enterprise that develops, promotes, and distributes software that Defendants intentionally designed to circumvent security features and thereby allow unauthorized access to the *WoW* software in violation of Blizzard's intellectual property rights.  *Id.* ¶¶ 4, 10, 48-51.  Defendants' participation in this enterprise constitutes illegal racketeering activity.  *See, e.g.*, *Activision Publ'g, Inc. v. EngineOwning UG*, No. CV 22-0051-MWF (JCX), 2023 WL 3272399, at **23-26 (C.D. Cal. April 4, 2023) (plaintiff sufficiently alleged that

Mitchell
Silberberg &
Knupp LLP

22

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

operators of *Call of Duty* cheating software were participants in a RICO enterprise and engaged in the requisite acts of racketeering activity by, *inter alia*, producing and using "counterfeit access devices" "to circumvent [p]laintiff's anti-cheating software" and "obtain unauthorized and valuable access to [p]laintiff's [*Call of Duty*] game services").

**D.    The Requested Discovery is Likely to Reveal the Identities of the Defendants.**

"The final factor concerns whether the discovery sought will uncover the identities of the Doe Defendants." *Skout, Inc*, 2015 WL 224930, at *4 (citation omitted). Here, the requested discovery likely will confirm and reveal the identities of the various individuals and entities responsible for the development, operation, promotion, and distribution of Project Ascension, including, but not limited to, the identities of the Doe Defendants. For example, Blizzard seeks to discover the identifying information that the Doe Defendants would have been required to provide to the above-described online service providers (*e.g.*, social media platforms, payment processors) in order to use their services.

**E.    The Need for the Requested Discovery Outweighs Any Conceivable Prejudice to Defendants.**

The proposed (limited) expedited discovery will also serve the interests of justice, as it will ensure that all necessary defendants are included in this lawsuit as early as possible. *See Knapp v. Americredit Fin. Servs., Inc.*, 204 F.R.D. 306, 308-09 (S.D. W.Va. 2001) (granting expedited discovery to determine the identity of Doe defendants because it "further[s] the goal of assuring that the necessary parties are joined and participating in this action at the earliest possible date"); *Semitool*, 208 F.R.D. at 277 (reasoning that expedited discovery is justified where it will "substantially contribute to moving th[e] case forward"). Here, it is critical that Blizzard be able to expeditiously identify and include in this lawsuit all of the

Mitchell
Silberberg &
Knupp LLP

23

*EX PARTE* **APPLICATION FOR LIMITED EARLY DISCOVERY**

individuals responsible for Project Ascension, including the Doe Defendants, for several reasons:

*First*, online data often is ephemeral in nature and retained only for a limited period of time before it is destroyed in the ordinary course of business. *See UMG Recordings, Inc.*, 2008 WL 4104214, at *5 (finding good cause for expedited discovery due to risk that online service provider might destroy online data such as logs and records of a defendant's identifying information). The risk of losing critical data and evidence is particularly acute here, since this lawsuit has been publicized by the video game press. *See* Mayer Decl. ¶ 10. Thus, the Doe Defendants are aware that they have been sued, and may undertake efforts to make themselves even more difficult to find. For example, they may switch service providers or domain name providers; or delete or change online profiles, aliases, and accounts. They also may transfer assets to other corporations or other individuals; use alternative payment processors or financial institutions; or move to untraceable currencies such as Bitcoin.

*Second*, if Blizzard is required to wait to take discovery until the named Defendants appear in the action and participate in a Rule 26 conference (which they may not do), the necessary parties may not be named and included in the lawsuit for several months and, potentially, after the Court has already conducted a scheduling conference and set a trial date. Justice requires that all necessary parties be identified and served at the earliest possible date, so that they may participate in the action.

*Third*, some aspects of Blizzard's requested relief—such as an order and injunction requiring Defendants to shut down the Ascension Website and emulated Ascension Servers and to provide an accounting—are only possible if aimed at an identified individual (or individuals). Blizzard cannot seek such relief until the relevant individual (or individuals) has been named and served in this action.

In contrast to the foregoing, there will be no prejudice to Defendants (both named and unnamed) if the requested relief is granted. If the Court grants this *Ex*

Mitchell Silberberg & Knupp LLP

24

*Parte* Application, Blizzard will promptly serve the subpoenas and will provide a reasonable response date for the subpoena (no less than twenty-one days).  The subpoenaed parties will be able to notify any affected persons that Blizzard is seeking their identities and all parties will have the opportunity to raise objections by filing a motion to quash in this Court before the return date of the subpoena. Moreover, the subpoenaed parties will be asked for information that they eventually would be required to provide in the normal course of discovery, so it imposes no extra burden for such parties to respond to discovery on an expedited basis.  Once Blizzard has obtained the necessary information, it intends to amend its Complaint and serve any additional defendants.

## IV.    CONCLUSION

For the foregoing reasons, Blizzard's *Ex Parte* Application for leave to take expedited discovery should be granted.

DATED: June 26, 2026                    MARC E. MAYER
                                        MARISSA B. LEWIS
                                        MITCHELL SILBERBERG & KNUPP LLP


                                        By: */s/ Marc E. Mayer*
                                        Marc E. Mayer
                                        Attorneys for Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

25

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

**Certificate of Compliance**

The undersigned, counsel of record for Blizzard Entertainment, Inc., certifies that this brief contains 5,508 words, which complies with the word limit of L.R. 11-6.1, and does not exceed twenty-five pages, which complies with the page limit of Rule 11(b) of the Standing Order entered in this case (Dkt. No. 12).

Dated: June 26, 2026

*/s/ Marc E. Mayer*
Marc E. Mayer

Mitchell Silberberg & Knupp LLP

26

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY